## S05A0070. SAMMONS v. THE STATE.
(612 SE2d 785)

FLETCHER, Chief Justice.

A jury convicted Edith Tillyne Sammons of murder in the death of her estranged husband, Gregory Cooper Sammons.[1] She appeals, contending that she was absent from a critical stage of the proceedings. Because the trial court replaced a juror following an ex parte meeting at which Sammons was not present, and to which she did not consent, we reverse and remand for a new trial.

The State's evidence showed that Sammons' husband had filed for divorce. Just a few days before the crime occurred, her husband had been granted temporary custody of the couple's two children, and had sheriff's deputies remove Sammons from the marital home. On the night of the crime, the couple had an appointment with their pastor. On the way to the church, Sammons pulled to the side of the road and pretended to have car trouble. When her husband stopped, and offered to help, Sammons shot him, got back into her car and ran over him. She then went to a battered women's shelter where she had been staying. She had numerous bruises and cuts about her face and said she had been beaten by her estranged husband and shot him in self-defense.

Sammons' defense was that she was suffering from battered person syndrome and that she acted in self-defense. According to Sammons' testimony, on the night in question, she pulled to the side of the road because her car was acting up. Her husband stopped when he saw her, began arguing with her, and became very angry when he saw some medical records that detailed his prior abuse of her. When he went to get something out of his truck, Sammons testified that she took a gun out of her car and hid it under the wheel well because she was afraid. Next, Sammons' husband approached her and began beating her about the face. He then told her to leave and not show her face until it healed, but she said she was going to keep the appointment at the church. He started towards her with his fists raised and threatened that she would never see her children again, at which

---

[1] The crime occurred July 8, 1998. A grand jury indicted Sammons on November 2, 1998 for malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a crime. A jury trial was held on March 8-12, 1999, and the jury convicted Sammons on all counts on March 12, 1999. The trial court sentenced her to life imprisonment for malice murder, a twenty-year consecutive term for aggravated assault, and a five-year consecutive term for possession of a firearm during the commission of a crime. The felony murder conviction was vacated by operation of law. Sammons filed a motion for new trial on April 27, 1999. New counsel filed amendments in 2004. Following an evidentiary hearing, the trial court denied the motion on July 22, 2004. Sammons filed a notice of appeal on August 2, 2004, and the case was docketed in this Court on September 15, 2004. The case was orally argued on March 22, 2005.

point Sammons reached for the gun and fired. He ran into the woods, but then came back, tackled her and tried to strangle her. She escaped, ran back to her car, and got in it and drove away.

1. After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that any rational trier of fact could have found Sammons guilty beyond a reasonable doubt of the crimes for which she was convicted.[2]

2. Sammons contends that reversible error occurred when she was absent from a critical stage of the proceedings. The right of the defendant to be present at all proceedings against her is an important right guaranteed by the State Constitution.[3] The Courts of this State have long recognized and protected this right.[4] Although counsel may waive a defendant's presence, "in order for the waiver of counsel to be binding on the defendant, it must be made in his presence or by his express authority, or be subsequently acquiesced in by him."[5] If a defendant is denied the right to be present at a critical stage, prejudice is presumed and a new trial is mandated.[6]

Proceedings at which the jury composition is selected or changed are a critical stage at which the defendant is entitled to be present.[7] Furthermore, both this Court and the Court of Appeals have repeatedly emphasized the importance of the trial court not engaging in any type of ex parte communications with jurors.[8]

The record from the motion for new trial shows that after Sammons had rested her case, the trial court received a communication from one of the two African-American jurors on the panel. The trial court questioned the juror in chambers without Sammons' counsel or the prosecutor present, dismissed the juror, and replaced her with an alternate. The trial court then informed counsel in chambers that the juror had expressed discomfort at being on the jury because of the issues of race and sex that were brought out by the evidence, and that it had replaced that juror.[9] Then in open court, the

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] 1983 Ga. Const., Art. I, Sec. I, Par. XII; *Wilson v. State*, 212 Ga. 73, 74 (90 SE2d 557) (1955).

[4] See, e.g., *Pennie v. State*, 271 Ga. 419, 422 (520 SE2d 448) (1999); *Wade v. State*, 12 Ga. 25, 29 (1852).

[5] *Wilson*, 212 Ga. at 77-78.

[6] *Pennie*, 271 Ga. at 422.

[7] *Brooks v. State*, 271 Ga. 456, 456 (519 SE2d 907) (1999) (defendant has right to be present during jury strikes); *Russell v. State*, 230 Ga. App. 546, 546-547 (497 SE2d 36) (1998) (voir dire is critical stage); *Fictum v. State*, 188 Ga. App. 348, 350 (373 SE2d 54) (1988) (right to be present applies to jury selection). See also *Hanifa v. State*, 269 Ga. 797, 807 (505 SE2d 731) (1998) (defendant and counsel are entitled to be present at colloquy between judge and juror).

[8] See, e.g., *Hanifa*, 269 Ga. at 807; *Berryhill v. State*, 235 Ga. 549, 554 (221 SE2d 185) (1975); *Stewart v. State*, 165 Ga. App. 428, 430 (300 SE2d 331) (1983); *Miller v. State*, 13 Ga. App. 440, 442-443 (79 SE 232) (1913).

[9] There was evidence that Sammons permitted her older son to invite one of his friends, a

trial court announced that it had replaced the juror because she had "indicated a discomfort in continuing to serve," but did not disclose the reason for the juror's discomfort.

Sammons' lawyer did not waive Sammons' presence at the in-chambers meeting,[10] nor did he consult with her following the meeting. Sammons learned the juror had been replaced when the trial court made its announcement in open court. Sammons did not want the juror replaced and questioned her trial counsel about it. Her trial counsel said he would discuss it with her later, but did not. Nor did trial counsel alert the trial court to Sammons' objection to having the juror removed.

Under these circumstances, we conclude that Sammons did not waive her absolute right to be present when the trial court dismissed a juror for reasons related to the evidence in the case. Sammons did not acquiesce in the illegal proceedings in her absence and repudiated trial counsel's apparent silent waiver of her rights at the first opportunity — the motion for new trial hearing when she was represented by new counsel.[11] Because Sammons was absent from a critical part of the trial and she did not acquiesce in the removal of a juror outside her presence, the judgment must be reversed and remanded for a new trial.[12]

3. The majority of Sammons' remaining enumerations of error relate to her claims of ineffectiveness of trial counsel and thus, we need not address them. One enumeration is likely to recur on re-trial, and therefore, we will address it.

The State introduced into evidence several letters that Sammons wrote to other inmates while incarcerated. The State contends that the letters were admissible to impeach Sammons' testimony that she did not have an extramarital affair and that because her husband had raped her, she did not enjoy sexual intercourse. The letters, however, did not contain any statements regarding the alleged affair or rape.

A defendant who testifies is subject to cross-examination just as

---

16-year-old African-American, who was having trouble at home to live with them for a while, that people in the community were troubled to see this teenager, whom they described as a "big black man," driving fast in Sammons' car, and that "black" people were telephoning Sammons' friends to enlist their help in Sammons' efforts to regain custody. The State also tried to establish that Sammons had an affair with the teenager, but Sammons denied it.

[10] Compare *Pennie*, 271 Ga. at 421 (counsel made an express waiver, but without defendant's knowledge); *Wilson*, 212 Ga. at 77.

[11] Compare *Harwell v. England*, 234 Ga. 640 (217 SE2d 154) (1975) (defendant did not repudiate counsel's express waiver of his presence as soon as he learned right to attend jury view existed).

[12] Prosecutors are reminded that they share the duty to ensure a fair trial and that if proceedings take place outside the presence of the defendant, the State may alert the trial court of the need to allow the defendant time to discuss the issue with counsel and to permit defendant to place an express waiver on the record.

any other witness.[13] Accordingly, a defendant may be impeached by proof of contradictory statements.[14] However, for a prior statement to be admissible, it must in fact be inconsistent with the witness's testimony.[15] Because the letters were not inconsistent with Sammons' testimony, and in fact, did not even address issues in the trial, they were inadmissible as impeachment evidence.

*Judgment reversed. All the Justices concur.*

DECIDED MAY 9, 2005 —
RECONSIDERATION DENIED JUNE 6, 2005.

*Brian Steel*, for appellant.

*Richard A. Mallard, District Attorney, Keith A. McIntyre, Assistant District Attorney, Thurbert E. Baker, Attorney General, Julie A. Adams, Assistant Attorney General*, for appellee.

---

[13] OCGA § 24-9-20.

[14] *Williams v. State*, 257 Ga. 761 (363 SE2d 535) (1988); OCGA § 24-9-83.

[15] *Jones v. State*, 265 Ga. 138, 141 (454 SE2d 482) (1995).