**FIRST DIVISION
PHIPPS, C. J.,
ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 15, 2014**

# In the Court of Appeals of Georgia

A14A0188. LEE V. PHILLIPS, IV BY NEXT FRIEND SANTHONIA HECTOR v. HARMON et al.

McMILLIAN, Judge.

Lee V. Phillips, IV, by and through his mother Santhonia Hector, and Hector individually, (collectively "Plaintiffs") filed this medical malpractice action against Marcia R. Harmon, CNM,[1] Deborah E. Haynes, M.D., Eagles Landing OB-GYN Associates, P.C., Eagles Landing OB-GYN Associates II, LLC, and Henry Medical Center, Inc. (collectively "Defendants"), alleging that, due to Defendants' negligence, Phillips suffered oxygen deprivation shortly before birth, which resulted in severe, permanent neurological injuries, including spastic quadriplegia, blindness, and an inability to speak.

---

[1] "CNM" refers to a certified nurse midwife.

The case ultimately proceeded to a jury trial, which commenced on August 20, 2012 and, following approximately one and a half days of deliberations, the jury returned a verdict for the Defendants on September 6, 2012. Plaintiffs filed a motion for new trial asserting, among other things, that the trial court erred by engaging in a communication with the jury when neither the parties nor their attorneys were present, and by refusing to give Plaintiffs' requested charge on spoliation of evidence. The trial court denied their motion, and Plaintiffs filed this appeal, raising the additional claim that the Defendants improperly introduced evidence of collateral source benefits. We agree with Plaintiffs that they were entitled to a new trial and reverse.

1. We first consider Plaintiffs' contention that they are entitled to a new trial because the trial court responded to a note from the jury during the course of their deliberations without ever advising the parties or their counsel that the communication had taken place.

(a) As to this issue, the record shows that several weeks after the jury returned its verdict, two jurors contacted Plaintiffs' counsel to express concerns about possible

juror misconduct.[2] During that conversation, Plaintiffs' counsel learned for the first time that the trial judge had responded to a note from the jury without ever disclosing the contents of the note or his response to either the parties or their counsel. Thereafter, Plaintiffs' counsel obtained affidavits from the two jurors, both of whom averred that, on the second day of deliberations, the jury sent a note to the trial judge "indicating that [they] were not able to reach a unanimous verdict." According to the jurors, the judge sent a note back, which instructed the jury to "continue deliberating."

After learning of the communication, Plaintiffs' counsel sent a letter to the trial judge requesting that he "take steps to see that both the jurors' note . . . and [his] responsive note are filed with the Clerk." After realizing that the court reporter did not have the note, the trial judge, without seeking input from counsel or holding a hearing, entered an order supplementing the record pursuant to OCGA § 5-6-41 (d).[3]

---

[2] The two jurors were concerned that another juror may have been sending and receiving text messages while they were deliberating. Plaintiffs originally raised this as an issue in their motion for new trial but have not asserted any claim of error arising from this juror's alleged misconduct on appeal.

[3] That section provides:

Where a trial in any civil or criminal case is reported by a court reporter, all motions, colloquies, objections, rulings, evidence, whether admitted

3

The order recites that four notes were delivered to the court while the jury was deliberating, that three of the notes were preserved and made a part of the record, but that the note pertaining to the jury's inability to reach a unanimous verdict was not one of them. The order found that the note read "What happens if we can't reach a unanimous verdict," and was delivered to the court immediately after lunch recess on September 5, 2012, which was the first day the jury deliberated. The trial judge further recited that due to the fact that the note did not actually indicate that the jury was "hung" and in view of the short amount of time the jury had been deliberating

---

or stricken on objection or otherwise, copies or summaries of all documentary evidence, the charge of the court, and all other proceedings which may be called in question on appeal or other posttrial procedure shall be reported; and, where the report is transcribed, all such matters shall be included in the written transcript, it being the intention of this article that all matters appear in the record. Where matters occur which are not reported, such as objections to oral argument, misconduct of the jury, or other like instances, the court, upon motion of either party, shall require that a transcript of these matters be made and included as part of the record. The transcript of proceedings shall not be reduced to narrative form unless by agreement of counsel; but, where the trial is not reported or the transcript of the proceedings for any reason is not available and the evidence is prepared from recollection, it may be prepared in narrative form.

4

after such a lengthy trial, he did not believe consultation with counsel about his response to the note was necessary, and therefore wrote on the same piece of paper "please continue deliberating" and had the bailiff return the note to the jury. The trial judge also stated the note had remained with the jury, and presumably was destroyed along with the jurors' personal notes as instructed by the bailiff after the verdict was returned.

Plaintiffs subsequently filed a motion to recuse or disqualify the trial judge due to the perceived conflict between his order supplementing the record and the jurors' affidavits. The trial judge granted the motion to recuse, and the case was re-assigned. Following a hearing on Plaintiffs' motion for new trial, the assigned judge rejected Plaintiffs' claim that the trial court's communication with the jury was per se reversible error, and concluded that the Plaintiffs were not entitled to a new trial because the note was not impermissibly misleading or coercive. Plaintiffs now challenge that ruling, arguing that, under the circumstances of this case, we should presume that the trial judge's communication with the jury was harmful, and that, in any event, the trial judge's response was coercive under the circumstances in which it was given.

5

(b) In *Kesterson v. Jarrett*, 291 Ga. 380 (728 SE2d 557) (2012), our Supreme Court reaffirmed and elucidated the fundamental right of a natural party to be present in the courtroom during the trial of his or her case. As the Court explained,

> [The right to be present] has been treated as a component of the due process of law in both criminal and civil cases since the early decisions of this Court. . . . *Tift v. Jones*, 52 Ga. 538, 542 (1874) (explaining that a civil litigant has a "right to be present in the court during the whole trial of his case.") . . .The right to be present is also reflected textually in our State Constitution, in the provision guaranteeing to every person "the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state." Ga. Const. of 1983, Art. I, Sec. I, Par. XII.

*Kesterson*, 291 Ga. at 384 (2) (a).

The issue in *Kesterson* – whether a party may be denied the right to be present and properly excluded from the courtroom because his or her physical or mental condition might invoke undue sympathy from the jury – was one of first impression in this state.[4] However, there is, as noted in *Kesterson,* a long line of precedent in

---

[4] *Kesterson* was also a medical malpractice case where a child suffered neurological injuries allegedly caused by oxygen deprivation shortly before birth. Our Supreme Court ruled that the exclusion was improper under the facts of that case, holding that in light of a party's fundamental and state constitutional right to be present during their trial, the trial court should have used other, less drastic means to ensure a fair trial.

6

Georgia affirming a civil litigant's right to be present at their trial. See, e.g., *St. Paul Fire & Marine, Ins. Co. v. Brunswick Grocery Co.*, 113 Ga. 786, 789 (39 SE 483) (1901) (it is *"manifestly erroneous"* for a party to the "issue" to be excluded from the courtroom); *Mays v. Tharpe & Brooks*, 143 Ga. App. 815, 816 (240 SE2d 159) (1977) ("A substantial right of a party to litigation is to be present at the trial and render assistance to his counsel as the developments unfold"); *Walden v. MARTA*, 161 Ga. App. 725, 726 (288 SE2d 671) (1982) (in sequestering of witnesses, plaintiff should be given the option of testifying first so that plaintiff can be present during the trial).

Although a party's right to be present is firmly established in both our civil and criminal jurisprudence, there appears to be a dearth of authority addressing the right of a civil litigant to be present when the trial judge engages in communications with the jury. However, our appellate courts have addressed this issue numerous times in criminal cases and, as have the parties, we turn to those cases for guidance.[5]

---

[5] We do so with caution, recognizing that there are other constitutional rights, such as those guaranteed to criminal defendants by the Sixth Amendment, which are not implicated in civil cases. E.g., *Lowery v. State*, 282 Ga. 68, 73 (4) (b) (646 SE2d 67) (2007) (analyzing both a right to be present claim and an ineffective assistance of counsel claim arising out of the trial judge's failure to inform or consult the defendant or his counsel prior to responding to the jury's inquiry).

7

As our Supreme Court explained in *Hanifa v. State*, 269 Ga. 797, 807 (6) (505 SE2d 731) (1998), "[w]ithin the Georgia constitutional right to the courts is a criminal defendant's 'right to be *present*, and see and hear, *all the proceedings* which are had against him on the trial before the Court.' A colloquy between the trial judge and the jury is a part of the proceedings to which the defendant and counsel are entitled to be present." (Citations and punctuation omitted; emphasis in original.) Id. at 807 (6). See also *Cox v. Yates*, 96 Ga. App. 466 (100 SE2d 649) (1957) (generally, parties to civil action have the right to be present at all stages of the trial).

> Unquestionably the trial judge should not in any manner communicate with the jury about the case, in the absence of the accused and his counsel, pending the trial; and the better practice is for the judge to have no communication with the jury on any subject except through the medium of the sworn bailiff in charge of the jury; and the communication should be restricted, in the absence of the accused and his counsel, to matters relating to the comfort and convenience of the jury. There should be no communication which would tend in any manner to prejudice the accused . . . ; and unless the character of the communication clearly shows that it could not have been prejudicial to the accused, the presumption of law would be that it was prejudicial.

*Hanifa,* 269 at 807 (6). *Lowery v. State*, 282 Ga. 68, 73 (4) (b) (646 SE2d 67) (2007) ("[a] trial court's communication with a jury on substantive matters is a part of the proceedings to which the defendant and counsel are entitled to be present.").

Further, and pertinent to this case, our appellate courts have specifically considered judge/jury communications concerning a jury's ability, or inability, to reach a verdict, and routinely held that it is error for a trial judge to respond to such an inquiry in the absence of the defendant and/or his counsel. E.g., *Lowery v. State*, 282 Ga. at 74 (4) (b) (i); *Wells v. State*, 297 Ga. App. 153, 159-160 (2) (676 SE2d 821) (2009); *Barnett v. State*, 276 Ga. App. 238, 241-242 (2) (623 SE2d 136) (2005). But see *Stewart v. State*, 165 Ga. App. 428, 429-430 (2) (300 SE2d 331) (1983) (trial court's response of "keep on trying" to deadlocked jurors "not so material to appellant's case as to require her presence and that of her counsel.").

Defendants, while certainly not suggesting that ex parte communications between a trial judge and a jury are permissible even in a civil trial, urge that the stringent requirements applicable to criminal cases should be reserved for those civil cases such as *Kesterson* where a fundamental right has been totally or substantially denied. But we find that the right to be present has been totally denied here. Although certainly the duration of the exclusion was not as long as *Kesterson*, the violation here

9

was in at least one way more absolute – unlike in *Kesterson*, where the plaintiff had her attorneys representing her during trial, Plaintiffs here were wholly without any representation during the trial court's communication with the jury. Accordingly, we see no reason for the rule to be different in civil cases, and find that, as a general proposition and broadly stated, a trial judge should not answer a question from the jury in a civil case about their ability to reach a verdict unless the parties and/or their counsel are present as well.

(c) The question then, and the one presented squarely by this case, is whether the absolute failure to have counsel or the parties present for this type of communication with the jury requires reversal or whether we should further consider whether the error harmed the party seeking relief.[6]

The harmless error rule applicable to civil cases is codified in OCGA § 9-11-61:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise

---

[6] We are aware that the Defendants and their counsel were also unaware of the communication. We thus make clear that our analysis would be the same if they, instead of the Plaintiffs, had suffered an adverse verdict.

10

disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Under this section, Plaintiffs normally would not be entitled to a new trial unless they could show "material harm" from the trial court's actions. *Ford Motor Co. v. Conley*, 294 Ga. 530 (757 SE2d 20) (2014). However, as also stated in *Conley*, harm may nevertheless be presumed under certain circumstances, such as when a fundamental right has been denied and the error cannot be cured after the verdict.[7] We see no reason why denial of a fundamental and constitutional right such as the right to be present – in person or by counsel – should not also be one of those rare circumstances where prejudice might be presumed. See Ga. Const. of 1983, Art. I, Sec. I, Par. XII; see also *St. Paul Fire & Marine Ins.*, 113 Ga. at 789 (it was "manifestly erroneous" to exclude the party from the courtroom).

Although the Court in *Kesterson* did not use the terms "presumed harm" or "presumed prejudice" in its analysis of the right to be present violation in that case,

---

[7] In *Conley*, appellants asserted a denial of their right to a fair and impartial jury when the jury was not qualified as to insurance carriers with a financial interest in the case. 294 Ga. at 549 (3) (b).

11

it also did not appear to require a showing of specific harm.[8] Rather, the Court distinguished its prior decision in *Willingham v. Willingham*, 192 Ga. 405 (15 SE2d 514) (1941), in which a harmless error test was applied, by stating that unlike in *Willingham*, the Court in *Kesterson*, "'can see how' the trial court's decision [to exclude the plaintiff] 'could possibly have operated to the injury' of Appellants." *Kesterson*, 291 Ga. at 389. Further, the Court limited the holding in *Willingham*, which involved a bench trial in a custody case where the parents, but not their attorneys, were excluded while the children were questioned, to the circumstances presented there, stating it should not be viewed "as precedent for excluding a party from a typical civil trial." Id.

In short, we glean nothing from *Kesterson* that requires us to apply a harmless error analysis to a right to be present violation such as the one that occurred in this case.

Moreover, as stated above, in our criminal law jurisprudence, our appellate courts have "consistently ruled that the denial of the right to be present guaranteed by the Georgia Constitution is not subject to harmless error review on direct appeal.

---

[8] The Court did note, however, the presumptively prejudicial standard applicable to criminal cases. *Kesterson*, 291 Ga. at 386.

Instead, a violation is presumed to be prejudicial. Thus, absent a valid waiver, violation of the right to be present triggers reversal and remand for a new trial whenever the issue is properly raised on direct appeal." (Citation omitted.) *Ward v. State*, 288 Ga. 641, 646-647 (4) (706 SE2d 430) (2011). As we have explained, "[t]he accused and his counsel have the right to be present at every stage of the proceedings and personally see and know what is being done in the case. To say that no injury results when it appears that what occurred in their absence was regular and legal would, in effect, practically do away with this great and important right, one element of which is to see to it that what does take place is in accord with law and good practice." (Citations and punctuation omitted.) *Goodroe v. State*, 224 Ga. App. 378, 380 (1) (480 SE2d 378) (1997). See *Kesterson*, 291 Ga. at 385 ("under Georgia law the right to be present *for all critical stages of criminal proceedings* has been deemed so fundamental that a violation properly raised on direct appeal from a conviction is presumed to be prejudicial, requiring a new trial.") (emphasis supplied); *Smith v. State*, 284 Ga. 599, 609 (4) (669 SE2d 98) (2008) (harmless error applicable to federal claim of right to be present but "denial of the right to be present guaranteed by the Georgia Constitution is not subject to harmless error review on direct appeal"); *Sammons v. State*, 279 Ga. 386, 387 (2) (612 SE2d 785) (2005) (reversal required

when defendant not present when juror released); *Pennie v. State*, 271 Ga. 419, 422 (520 SE2d 448) (1999) (new trial required when defendant was involuntarily absent during colloquy between trial judge and juror); *Wells*, 297 Ga. App. at 160 (2) (ex parte communication between trial judge and jury presumptively prejudicial, mandating a new trial); *Vaughn v. State*, 281 Ga. App. 475, 478-479 (636 SE2d 163) (2006) (same); cf. *Logan v. State*, 266 Ga. 566 (468 SE2d 755) (1996) (reversal not required where communication was a hypothetical inquiry by one juror which did not occur during deliberations and the trial court did not provide any specific instruction in response to the inquiry). But see *Stewart*, 165 Ga. App. at 430-431 (2) (pre-*Lowery* case affirming denial of motion for new trial based on finding that subject communication was not prejudicial to the appellant).

(d) Defendants argue that, in any event, the error that occurred here would not be reversible even against a criminal defendant because the character of the communication shows that it could not have been prejudicial to Plaintiffs, and that our appellate courts have in fact applied the harmless error rule even in criminal cases involving a violation of the right to be present. E.g., *Barnett*, 276 Ga. App. at 241 (2).

But a critical difference exists between many of the cases in which our appellate courts have deemed a right to be present violation harmless or waived and

14

the case at hand, which is that those communications were in fact disclosed to the defendant and/or his attorney prior to the time the jury returned its verdict. Depending on the time of this disclosure, this afforded the defendant or his counsel the opportunity to have input concerning the court's response, request that the court query the jury about the potential deadlock, object, move for a mistrial, or at a minimum, and importantly here, preserve a record of the communication. And if the defendant or his attorney was told of the communication prior to the return of the verdict and they failed to act, a waiver of the right to be present violation would occur. E.g., *Lowery*, 282 Ga. at 74 (4) (b) (i) (no violation of the right to be present when appellant and his counsel present for court's response); *Hanifa*, 269 Ga. at 808 (6) ("we endorse the . . . holding that a defendant waives appellate review of an allegedly improper judge/jury communication when, prior to verdict, defendant is aware of the communication and fails to voice an objection."); *Coleman v. State*, 317 Ga. App. 409 (731 SE2d 94) (2012) (counsel for appellant present and conferred on court's response, and appellant informed of the communication prior to the verdict but did not object); *Daniel v. State*, 292 Ga. App. 560, 561 (1) (665 SE2d 696) (2008) (appellant waived right to assert error when he failed to object or seek to perfect the record after he was made aware of communication prior to the entry of the verdict);

15

*Barnett*, 276 Ga. App. at 240-241 (2) (trial court read the jury's question and court's response to appellant's attorney before the jury's verdict was published, and the attorney moved for a mistrial);[9] see also *Kesterson*, 291 Ga. at 385 (2) (b) (party can waive right to be present or acquiesce in counsel's waiver of his/her right).

(e) Perhaps partly in response to the frequency with which right to be present claims stemming from ex parte communications between trial judges and juries arise in criminal cases, our Supreme Court in *Lowery* set out a procedure

> to require trial courts to have jurors' communications submitted to the court in writing; to mark the written communication as a court exhibit in the presence of counsel; to afford counsel a full opportunity to suggest an appropriate response; and to make counsel aware of the substance of the trial court's intended response in order that counsel may seek whatever modifications counsel deems appropriate before the jury is exposed to the instruction.

*Lowery*, 282 Ga. at 76 (4) (b) (ii). Although the Supreme Court in *Lowery* did not specifically state that this procedure applies to civil as well as criminal trials, it also

---

[9] We also do not believe that *Burtts v. State*, 269 Ga. 402, 403 (3) (499 SE2d 326) (1998) and *Reid v. State*, 319 Ga. App. 782, 784 (2) (738 SE2d 624) (2013) are necessarily controlling here because both of those cases involved a question from the jury asking to rehear evidence and did not touch on the ability of the jury to render a verdict.

16

did not specifically limit its application to criminal cases.[10] And if the trial judge had

followed the procedure in *Lowery*[11] for preserving the communication and making it

---

[10] It is noteworthy, however, that the court in *Lowery* declined to reverse the appellant's conviction based on a denial of the right to be present, reasoning that appellant and his counsel were present for the trial court's response to the jury's question, and that appellant did not have the right to be present when his counsel and the trial court discussed the court's response to the jury's question. *Lowery*, 282 Ga. at 74 (4) (b) (i). But the Court went on to find that assuming the right to counsel includes the "right to have reasonable notice of a deliberating jury's substantive communication and a meaningful opportunity to be heard" in response thereto, defendant's Sixth Amendment right to counsel had been violated because counsel was not in fact informed of the contents of the note or allowed to have input prior to the trial court's response. Id. at 74 (4) (b) (ii). Thus, we cannot ignore that the Court announced the procedure for handling judge/jury communications under the division analyzing appellant's ineffective assistance of counsel claim, and that the procedure requires, among other things, that the trial judge inform counsel, not the party, about the contents of the note and seek counsel's response before responding. But we stress that we are by no means holding here that the procedure set out in *Lowery* applies to civil litigants, who do not enjoy the same Sixth Amendment protections as criminal defendants. However, as set forth in more detail below, the wisdom of requiring civil trial courts to adhere to the *Lowery* mandate is aptly illustrated by this case, where neither the parties nor their attorneys were informed of the communication at any time during trial.

[11] We note that *Lowery* did not state that a failure to follow that procedure constituted per se reversible error, and in the post-*Lowery* cases of *Grant v. State*, 295 Ga. 126 (___ SE2d ___) (2014) and *Humphreys v. State*, 287 Ga. 63 (694 SE2d 316) (2010), the Supreme Court declined to reverse when the contents of the communication had been placed on the record but the mandates of *Lowery* had not been exactly followed. Thus, those cases do not involve the circumstance present here when there has been a complete failure to preserve the communication.

17

a part of the record for our review,[12] there would be no doubt about when the jury made its inquiry and the exact nature of their question to the trial court. If at that time uncertainty had been revealed about the nature of the inquiry, as there now appears to be, that uncertainty could have been resolved when the jury remained convened and the parties and their counsel were present to perfect the record as needed. But the trial court did not follow *Lowery*, or take any steps on its own to preserve the communication, and this Court has been left with differing, although we are certain, good faith, recollections both as to the timing of the communication and what it meant, recollections which no doubt have been eroded by time and intervening events. See *Lindsey v. State*, 277 Ga. App. 18, 21 (625 SE2d 431) (2005).

_____

[12] Although we have no doubt the trial judge proceeded in good faith in entering an order supplementing the record pursuant to OCGA § 5-6-41 (d), that section does not precisely fit the circumstances here where there is an apparent disagreement between the recollections of the jury and the trial judge about a communication that occurred between them. Moreover, although OCGA § 5-6-41 (g) provides that the decision of the trial judge shall be final on a transcript prepared from recollection *if* the parties cannot agree, there is no similar mechanism for resolving an apparent conflict between the recollections of a trial judge and members of the jury. Further, it appears that the trial judge prepared the OCGA § 5-6-41 (d) order without input from the parties, and that the judge assigned after recusal did not resolve these apparent discrepancies in deciding the motion for new trial, finding instead that they were immaterial and irrelevant to his analysis.

18

These differences are not unimportant to any analysis which we might attempt to decide whether the communication at issue was coercive or misleading. As the Supreme Court explained in *Hanifa*, "[t]he contents of the communication are necessary to determine whether the trial court's erroneous communication with the jury constitutes harmful or harmless error." 269 Ga. at 808 (6). Further, as stated more recently by that Court in *Scott v. State*, 290 Ga. 883, 888 (6) (725 SE2d 305) (2012), "[c]ontextual factors, like timing, may play a role in determining coerciveness where there is a possibility that the charge could be coercive."

A similar circumstance was presented in *Lindsey*, and although not controlling,[13] we find our opinion in that case to be instructive. In that case, the judge, acting through the bailiff, responded to a question from the jury sent out during their deliberations concerning whether their verdict had to be unanimous. Although trial counsel was informed of the communication after it occurred, counsel did not request, and the trial court did not of its own accord, make a record of the communication. Thus, we explained,

_____

[13] Once again, the analysis in that case was in the context of an ineffective assistance claim, this time for the failure of trial counsel to object to the "process" by which the judge responded to the jury inquiry and because trial counsel did not have a record made of the communication.

19

[t]he communication involved in this case was not restricted to matters concerning the jury's "comfort and convenience." Instead, the information concerning the unanimity requirement could well be considered a supplemental charge, which should have been given in open court in [appellant's] presence. If trial counsel had objected to the procedure used to answer the jury's question, or if some record had been made of the jury's question and the trial court's response had been made in open court with all the parties present, vague recollections recorded weeks after trial would not be an issue. Given the legal nature of the question posed by the jury, the responsibility of trial judges and bailiffs to avoid improper communication with juries, and the state of the record in this case, we are unable to conclude that the communication here "could not have been prejudicial to" [the appellant].

(Citations omitted.) 277 Ga. App. at 21-22.

In the case at hand, Plaintiffs' counsel did attempt to perfect the record by taking immediate steps to have the communication made a part of the record as soon as he learned of it, but was unable to secure the actual communication despite his diligent efforts. Thus, this case presents one of those rare circumstances where the party who asserts they have been aggrieved has been effectively precluded from demonstrating harm. Such an inability of a party to prove they were harmed by an ex parte judge/jury communication obviously "affect[s] substantial rights." OCGA § 9-

20

11-61. Cf. *Stewart*, 165 Ga. App. at 429 (2) (content and timing of communication did not appear to be at issue).

(f) Similarly, and as was the situation in *Conley*, there is yet an additional reason why we believe that error must be presumed here, involving yet "another longstanding Georgia rule – the prohibition against jurors impeaching their verdict . . . ." *Conley*, 294 Ga. at 550 (4) (b). See also OCGA § 24-6-606.[14] Under that rule, it is arguable that the jurors would be precluded from even disclosing the fact and

---

[14] The motion for new trial hearing was held shortly after the effective date of Georgia's new Evidence Code, and OCGA § 24-6-606 applies to our analysis here. Section 24-6-606 (b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror shall not testify by affidavit or otherwise nor shall a juror's statements be received in evidence as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the jury deliberations or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment concerning the juror's mental processes in connection therewith; provided, however, that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the juror's attention, whether any outside influence was improperly brought to bear upon any juror, or whether there was a mistake in entering the verdict onto the verdict form.

contents of the communication to the court, its timing, the court's response, and the effect that such communication had on the deliberations. We need not decide the parameters of the rule against jurors impeaching their verdict here. But this demonstrates the extreme difficulty, if not impossibility, of a party to show harm when there is an absolute failure to preserve the communication or notify the parties and/or their counsel about it prior to the receipt of the verdict. Thus, as in *Kesterson*, we "can see how" this failure could affect the substantial rights of Plaintiffs to a fair trial.

Moreover, as the trial court noted in denying the motion for new trial, the evidence in this case was "close" and would have supported a verdict for either the Plaintiffs or the Defendants. Thus, this is not a situation where we can say that even a misleading or coercive communication could not have affected the outcome of the proceedings because a verdict was only authorized for the Defendants.

Accordingly, we must view these unique circumstances together – (1) that the communication was not disclosed to the Plaintiffs or their counsel until after the verdict; (2) the note and response were not made a part of the record at the time it was made or thereafter; (3) the differing recollections about the nature and timing of the communication; (4) the fact that those differences were never resolved in the trial

22

court by the judge who decided the motion for new trial; (5) the inability of the Plaintiffs to show what effect the communication had on the jury's verdict; and (6) our inability to say that a verdict would have been demanded for the Defendants regardless of the effect of the communication on the jury. Thus, based on the foregoing considerations and under the particular circumstances of this case, we find that Plaintiffs are entitled to a new trial.

2. Plaintiffs also argue that the trial court erred in refusing to give its requested charge on spoliation of evidence. Because this error will likely occur upon re-trial, we will also consider the trial court's ruling on this issue.

The record shows that Plaintiffs requested that the following charge be given to the jury: "Defendant Henry Medical Center destroyed the printed paper copy of the fetal heart rate tracing sometime after the delivery of Lee V. Phillips, IV. At the time Defendant Henry Medical Center destroyed the printer paper copy of the fetal heart rate tracing, Defendant Henry Medical Center was aware of the potential for litigation. The Plaintiffs are entitled to a presumption that the printed paper copy of the fetal heart rate tracing, which contained the handwritten notes that [nurse] Kim

23

Jones made during the labor at issue in this case,[15] would have been prejudicial to Defendant Henry Medical Center. The presumption may be rebutted by Defendant Henry Medical Center."

The trial court declined to give the charge, finding that Defendants had no knowledge or notice of potential litigation,"[16] but allowed the parties to present evidence and argument concerning the notes made on the fetal monitor paper strip, the use of the strip in creating the official medical record, and the destruction of the strip.

"[S]poliation refers to the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation." (Citation and punctuation omitted.) *Silman v. Assocs. Bellemeade*, 286 Ga. 27, 28 (685 SE2d 277) (2009).[17]

---

[15] Plaintiffs' basic contention is that the nurse would have noted what time CNM Harmon arrived in the delivery room in response to an emergency page issued after the fetal monitoring indicated that Phillips was experiencing sustained periods of bradycardia. Harmon's response time was critical to Plaintiffs' claim that Defendants failed to adhere to the appropriate standard of care.

[16] Although the trial court initially reserved ruling on the issue, it later denied the request to charge, and Plaintiffs objected to the failure to give the charge.

[17] "Potential sanctions to remedy the prejudice resulting from the spoliation of evidence include (1) a jury charge that spoliation of evidence creates the rebuttable presumption that the evidence would have been harmful to the spoliator; (2) dismissal of the case; or (3) the exclusion of testimony about the evidence." *Kelley v. Blue Line*

24

"The trial court has wide discretion in resolving spoliation issues, and we will not disturb its ruling absent abuse. A spoliation claim cannot be pursued unless the spoliating party was under a duty to preserve evidence. And our appellate courts have time and time again emphasized that to meet the standard for proving spoliation, the injured party must show that the alleged tortfeasor was put on notice that the party was contemplating litigation. The simple fact that someone is injured . . ., without more, is not notice that the injured party is contemplating litigation sufficient to automatically trigger the rules of spoliation. In other words, notice of potential *liability* is not the same as notice of potential *litigation.*

(Citations and punctuation omitted; emphasis in original.) *Whitfield v. Tequila Mexican Restaurant No. 1, Inc.*, 323 Ga. App. 801, 807 (6) (748 SE2d 281) (2013). See also *Clayton County v. Austin-Powell*, 321 Ga. App. 12, 17 (740 SE2d 831) (2013).

The following facts are relevant to the spoliation issue. At the time Phillips was delivered, the official medical records at Henry Medical were maintained in electronic form. Although the fetal monitor strips were not considered part of the official record, the nurses often took notes on the strips during the labor and delivery and would then refer back to the strips to complete the official record. Henry Medical maintained the

*Carriers, LLC.*, 300 Ga. App. 577, 579 (1) (685 SE2d 479) 2009.

25

strips for 30 days after a delivery, and then they were routinely destroyed. It is undisputed that the strips in this case were destroyed pursuant to this procedure.

It is likewise undisputed that at the time the paper tracings were destroyed, Henry Medical had not received any letters, calls, pleadings, or inquiries of any nature from the Plaintiffs that might have alerted Henry Medical that Plaintiffs were contemplating litigation. Accordingly, the trial court refused to give Plaintiffs' spoliation charge in this case because Defendants did not have notice of pending or contemplated litigation at the time the paper copy of the fetal heart rate tracing was destroyed.

Plaintiffs argue, however, that the trial court erred in refusing to give its requested charge because Henry Medical's actions after Phillips' birth showed that it was contemplating litigation at the time it destroyed the records. In support of this contention, Plaintiffs point to the fact that Henry Medical triggered its Sentinel Events/Medical Errors/Disclosures policies and procedures ("Sentinel Events Policies") immediately after Phillips' birth and that, pursuant to those policies, it began an internal investigation and then notified its insurance carrier and contacted counsel a short time later. Plaintiffs argue that once the Sentinel Events Policies were triggered, Henry Medical was required to "obtain and/or preserve evidence, as

26

appropriate (for example, photographs, equipment, supplies, etc.)" and to protect "[t]he medical record and other potential evidence . . . as needed in anticipation of possible litigation." Further, Plaintiffs argue that they presented evidence that risk management would "sometimes" request that the fetal monitor strips be preserved, although they were not requested here.

This Court has previously held that launching an internal investigation and taking certain steps pursuant to company policies do not, without more, equate to notice that litigation is contemplated or pending. *Powers v. Southern Family Markets of Eastman, LLC*, 320 Ga. App. 478, 479-480 (1) (740 SE2d 214) (2013). That is because "contemplation of potential *liability* is not notice of potential litigation." *Kitchens v. Brusman*, 303 Ga. App. 703, 707 (1) (a) (694 SE2d 667) (2010) (notice of contemplated litigation when plaintiffs' attorney had contacted defendants about viewing slides). See *Austin-Powell*, 321 Ga. App. at 17 (2). *Watts & Colwell Builders, Inc. v. Martin*, 313 Ga. App. 1, 5 (1) (720 SE2d 329) (2011) (completion of accident report does not demonstrate contemplated litigation); cf. *The Kroger Co. v. Walters*, 319 Ga. App. 52 (735 SE2d 99) (2012) (manager aware of potential litigation after potential plaintiff came back to the store and informed the manager he was going to the doctor); *Wal-Mart Stores v. Lee*, 290 Ga. App. 541, 544 (2) (659 SE2d 905)

27

(2008) (notice provided by letter from plaintiff's attorney attempting to settle and avoid litigation).

Moreover, we do not believe that *Baxley v. Hakiel Indus., Inc.*, 282 Ga. 312 (647 SE2d 29) (2007) mandates a finding of spoliation here. In *Baxley*, our Supreme Court found proof of spoliation, after the bar manager questioned the bar staff about what they served a customer who had been involved in an accident when she left the bar, and then failed to preserve a recording that might have provided critical evidence concerning the manner in which the customer left the bar. Although defendant's knowledge of potential or contemplated litigation was not directly spelled out in *Baxley*, our Supreme Court later explained *Baxley*, making it clear "the phrase 'potential for litigation' from *Baxley* refers to litigation that is *actually* 'contemplated or pending,' and nothing more." (Emphasis supplied.) *Silman*, 286 Ga. at 2.

Further, even if Henry Medical's Sentinel Events Policies required it to preserve the *official* medical records, it is undisputed here that the paper monitoring strips were not considered part of the official electronic medical records at the time Phillips was born. And even if there had been directives issued to preserve the paper strips in prior incidents, there is absolutely no evidence that such a request had been made in this case.

28

Accordingly, Henry Medical did not have notice of pending or contemplated litigation at the time the paper monitor strips were destroyed, and the trial court did not abuse its discretion in refusing to give Plaintiffs' requested charge on spoliation of evidence.

3. It is unnecessary, however, for us to consider Plaintiffs' contention that Defendants improperly admitted evidence of collateral source benefits in violation of a motion in limine. The alleged benefits at issue are certain educational services and resources that must be provided under federal law to children with disabilities, and evidence of these benefits was elicited by Defendants during cross-examination of Phillips' life care planner. Plaintiffs did not object to this evidence at the time it was introduced, and argue for the first time on appeal that it was not required to object to this testimony at trial because these services and resources were "benefits" from a collateral source that already had been ruled inadmissible pursuant to the grant of its motion in limine.[18]

_____

[18] Plaintiffs sought to exclude "[a]ny reference or suggestion that Plaintiffs have received, have been entitled to receive, will receive, or will become entitled to receive, benefits of any kind or character from a collateral source[.]" Defendants agreed that evidence of collateral source benefits should be excluded.

The issue of whether the services and resources at issue here constitute "benefits" from a collateral source as that term is used in this state is one of first impression, and the issue of the admissibility of this specific evidence was not raised or ruled upon below. Clearly, however, neither Plaintiffs nor Defendants will allow this case to be retried without bringing this issue to the attention of the trial court, who will then have the opportunity to rule on this evidentiary issue in the first instance.

*Judgment reversed. Ellington, P. J., concurs. Phipps, C. J., concurs in Divisions 1 and 3 and in judgment only as to Division 2.*