303 Ga. 414
FINAL COPY

S17A1748.  GOODRUM v. THE STATE.

GRANT, Justice.

Following a jury trial in the Superior Court of Troup County, Demario Goodrum was found guilty of felony murder and related offenses in connection with the shooting death of Tarvanisha Boyd.  In this appeal, Goodrum argues that the trial court violated his constitutional right to be present at all critical stages of his trial, and that he received ineffective assistance of trial counsel.  We affirm. [1]

I.

Viewed in the light most favorable to the verdicts, the evidence showed that, in December 2014, Boyd and Kristal Sinkfield hosted a party at their home.  Boyd, Sinkfield, Goodrum, and several others were in the kitchen

---

[1] The victim was killed on December 12, 2014.  On March 11, 2015, Goodrum was indicted by a Troup County grand jury for malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), aggravated assault by shooting Boyd with a gun (Count 3), possession of a firearm during the commission of a felony (Count 4), possession of a firearm by a convicted felon during the commission of a crime (Count 5), driving under the influence (less safe) (Count 6), driving under the influence (per se) (Count 7), and failure to stop at a stop sign (Count 8).  At the conclusion of a trial held December 15-17, 2015, the jury acquitted Goodrum of malice murder but found him guilty of Counts 2-4, 6, and 8.  Counts 5 and 7 were nolle prossed by the State.  The trial court sentenced Goodrum to imprisonment for life without parole for Count 2, five years consecutive for Count 4, 12 months concurrent for Count 6, and 12 months concurrent for Count 8.  Count 3 merged with Count 2 for sentencing.  See *Green v. State*, 283 Ga. 126, 130 (657 SE2d 221) (2008).  On December 21, 2015, Goodrum filed a motion for new trial, which he amended on October 20, 2016, after the appearance of new counsel.  Following a hearing, the trial court denied the motion for new trial on November 10, 2016.  Goodrum filed a timely notice of appeal on November 15, 2016, and the case was docketed in this Court to the August 2017 term and submitted for a decision on the briefs.

playing cards when Goodrum and Boyd got into a heated argument. The two exchanged blows, and Sinkfield stepped between them and pushed Goodrum back. According to Goodrum's testimony at trial, the entire group of people then advanced toward him, backing him up against the stove. Goodrum also claimed that he saw someone hand Boyd a gun, but four eyewitnesses testified that neither Boyd nor anyone else in the room besides Goodrum had a gun that night. Goodrum pulled out a 9 millimeter handgun and shot Boyd in the chest; he then ran out of the house, got into his car, and drove away. Later that night, police investigators found several .40 caliber cartridges, a .380 bullet, and a .25 caliber casing in the front yard, and a possible bullet hole in Goodrum's car. Boyd was taken to the hospital, but later died from the gunshot wound to the chest.

Police officer William Jones was responding to Sinkfield's 911 call when he saw Goodrum run a stop sign and crash into an elementary school. Officer Jones stopped and questioned Goodrum, who said he had been at a party with his brother-in-law when "they" started shooting, so he left. When Officer Jones asked who was shooting, Goodrum said he didn't know. Goodrum smelled strongly of alcohol, and his speech was slow and slurred.

Although Goodrum does not challenge the sufficiency of the evidence admitted at trial, it is our practice in murder cases to review the record and determine whether the evidence was legally sufficient under the standard set out in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Having done so, we conclude that the evidence introduced at trial and summarized above was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Goodrum was guilty of the crimes for which he was convicted. See id. at 319.

## II.

Goodrum contends that his state constitutional right to be present at all critical stages of the trial proceedings was violated when the trial court dismissed one of the trial jurors after a discussion in chambers at which he was not present. But Goodrum acquiesced to his absence from that proceeding.

After closing arguments, the judge told the jury that there would be a "short break" before they received their instructions. The jury and Goodrum then left the courtroom. When the jury and Goodrum returned to the courtroom some time later, the judge explained:

> All right, ladies and gentlemen, I know that was a long few minutes that you were in the jury room, but an issue came up while you were out that we had to deal with. And as a result of that issue, it became necessary for me to excuse Mr. Tullis from the jury. So now we're down to 12 jurors. The 12 of you in the box will be the 12 jurors who will be deciding this case.

Goodrum did not express any concern about or objection to what had occurred to his counsel or the court, and the judge then charged the jury.

After the jury returned their verdicts, the judge sentenced Goodrum and the jury returned to the jury room to be dismissed. The judge then put on the record in open court more details about what had occurred during the pre-charge break. The judge explained that at some point before the break, the district attorney's office received information that juror Tullis had been previously convicted of a felony; he apparently had acknowledged that fact in the jury assembly room but indicated that he believed his civil rights had been restored. The prosecutor and the court were unable to verify the restoration of the juror's civil rights, so the judge excused the juror, noting that an alternate juror was available. There again is no indication that Goodrum expressed any concern about or objection to the procedure used to excuse the juror.

Goodrum's counsel did not object to Goodrum's absence from the discussion about the juror's removal, but counsel's waiver of Goodrum's asserted right to be present is binding on Goodrum only if it was made at his express direction *or* in open court in his presence *or* if he acquiesced to the waiver. See *Williams v. State*, 300 Ga. 161, 165 (794 SE2d 127) (2016). Because the first two options clearly were not satisfied, we examine if Goodrum acquiesced to the waiver. "As our precedents explain, acquiescence, which is a tacit consent to acts or conditions, 'may occur when counsel makes no objection and a defendant remains silent after he or she is made aware of the proceedings occurring in his or her absence.'" *Burney v. State*, 299 Ga. 813, 820 (792 SE2d 354) (2016) (citation omitted). See also *Ward v. State*, 288 Ga. 641, 646 (706 SE2d 430) (2011) ("Acquiescence means a tacit consent to acts or conditions, and implies a knowledge of those things which are acquiesced in." (citations and punctuation omitted)).

The asserted right at issue in this case was Goodrum's "constitutional right to be present during the proceedings at which one of the jurors trying his case was removed." *Zamora v. State*, 291 Ga. 512, 518 (731 SE2d 658) (2012). Immediately after the discussion from which Goodrum was excluded, the trial court advised him and everyone else in the courtroom that an issue

5

had arisen during the break that the court and others had to deal with and, as a result of that issue, the court had excused juror Tullis from the jury that would be deciding Goodrum's case. Thus, the court made it clear that Goodrum had not been present during a proceeding at which one of the jurors trying his case was removed. Goodrum did not express any concern about or objection to his absence during that discussion, nor did he ask for more details about the matter. Moreover, even when, after being found guilty by the jury from which juror Tullis had been removed, Goodrum was told the details of the discussion and the reason for the juror's removal, he did not express any concern about the matter or his absence from the discussion to his counsel or the court, and the trial was adjourned.

Under these circumstances, Goodrum acquiesced in his counsel's waiver of his claimed right to be present for the discussion about juror Tullis. See, e.g., *Burney*, 299 Ga. at 820-821 (finding acquiescence to the appellant's absence from a proceeding involving juror notes and citing other cases similarly finding acquiescence to an appellant's absence during the discussion of juror issues). Compare *Ward*, 288 Ga. at 646 ("Since appellants were not informed of the ex parte excusal of the juror, they could not knowingly acquiesce to the waiver on the part of their attorneys."); *Sammons*

6

*v. State*, 279 Ga. 386, 388 (612 SE2d 785) (2005) (holding that there was no acquiescence where the appellant questioned her counsel about the juror removal as soon as she was informed of the meeting held in her absence).

## III.

Goodrum also alleges that his trial counsel provided ineffective assistance when he failed to object to portions of the State's closing argument. To succeed on this claim, Goodrum must show that trial counsel's performance was deficient and that he was prejudiced by his attorney's errors. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). In order to meet the first prong of the *Strickland* test, Goodrum must "overcome the 'strong presumption' that counsel's performance fell within a 'wide range of reasonable professional conduct,' and that counsel's decisions were 'made in the exercise of reasonable professional judgment.'" *Simmons v. State*, 299 Ga. 370, 375 (788 SE2d 494) (2016) (citations omitted). Decisions made as a matter of trial strategy and tactics do not amount to ineffective assistance of counsel unless "they were so patently unreasonable that no competent attorney would have followed such a course." Id.; see *Scott v. State*, 290 Ga. 883, 889 (725 SE2d 305) (2012).

7

To meet the second prong, prejudice, Goodrum must show that there is a reasonable probability that, but for the deficiency in counsel's performance, the outcome of the trial would have been different. *Strickland*, 466 U. S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The failure to make the required showing on either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *Trimble v. State*, 297 Ga. 180, 183 (773 SE2d 188) (2015).

During the State's closing argument, the prosecutor argued that if Goodrum really had shot Boyd in self-defense, he would have called 911 after the shooting. Goodrum contends that the prosecutor's comments violated the "bright line rule" articulated in *Mallory v. State*, 261 Ga. 625 (409 SE2d 839) (1991), overruled on other grounds as recognized in *Clark v. State*, 271 Ga. 6, 10 (515 SE2d 155) (1999), in which this Court cited a former rule of evidence and held that it is impermissible to comment on a criminal defendant's pre-arrest silence, even where the accused had not received *Miranda* warnings and where the defendant testifies at trial (as Goodrum did). [2]  But here the issue relevant to Goodrum's ineffective assistance claim is not whether the prosecutor's comments were improper;

_____

[2] To date, this Court has declined to decide *Mallory*'s continuing validity under the current Evidence Code. See, e.g. *Dublin v. State*, 302 Ga. 60, 62 (805 SE2d 27) (2017). As a decision on that issue is not necessary to resolve Goodrum's appeal, we again decline to examine it here.

rather, the question is whether counsel's decision not to object to the comments was objectively unreasonable under the circumstances of the case and in light of prevailing professional norms. See *Hartsfield v. State*, 294 Ga. 883, 887 (757 SE2d 90) (2014). We cannot say that it was.

At the motion for new trial hearing, Goodrum's trial counsel testified that he chose not to object to the prosecutor's comments because he thought that the argument was "absurd," given the short—and evidently eventful—period of time between the shooting and Goodrum's arrest. Instead of objecting during the State's argument, counsel responded by highlighting the absurdity of the argument in his own closing—pointing out that Goodrum had fled from the house in a hail of bullets and crashed only a few blocks away, after which the police arrived within seconds. Goodrum has not shown that this tactical decision was "so patently unreasonable that no competent attorney would have followed such a course." *Simmons*, 299 Ga. at 375; see *Smith v. State*, 296 Ga. 731, 735-736 (770 SE2d 610) (2015) (counsel's decision to remain silent and comment on prosecutor's closing argument "theatrics" in his own closing did not amount to ineffective assistance). His claim of ineffective assistance therefore fails.

Judgment affirmed. All the Justices concur.

9

NAHMIAS, Justice, concurring.

I join the Court's opinion, including its holding in Division II that Goodrum acquiesced to his absence for the discussion during which the trial court removed one of the jurors trying his case. I write separately to recognize that it "has long been established that '(p)roceedings at which the jury composition is selected or changed are . . . critical stage(s) [of a trial] at which the defendant is entitled to be present.'" Zamora v. State, 291 Ga. 512, 518 (731 SE2d 658) (2012) (quoting Sammons v. State, 279 Ga. 386, 387 (612 SE2d 785) (2005)). "Accordingly, [Goodrum] clearly had a constitutional right to be present during the proceedings at which one of the jurors trying his case was removed." Id.

The State contends that the proceeding from which Goodrum was excluded involved a purely legal question akin to the issues discussed during

a charge conference or a bench conference on evidentiary or procedural issues. See, e.g., Heywood v. State, 292 Ga. 771, 774 (743 SE2d 12) (2013); Huff v. State, 274 Ga. 110, 111 (549 SE2d 370) (2001). That is incorrect. To begin with, a sitting juror could not be excused without a factual showing of cause — in this case whether juror Tullis had been previously convicted of a felony and, if so, whether his civil right to serve on a jury had been restored. *All* of the evidence regarding those facts was developed outside Goodrum's presence, including during the break at which the juror was questioned in chambers and the prosecutor and the trial court sought unsuccessfully to verify his belief that his rights had been restored. The court may also have heard legal arguments from counsel and made a ruling applying the law to the facts as the court viewed them, but the proceeding was not limited to purely legal issues.

In addition, this Court's precedents to date have not drawn a distinction between factual and legal issues with regard to a defendant's right to be present during discussions about a juror's removal. See, e.g., Williams v. State, 300 Ga. 161, 165 (794 SE2d 127) (2016) (holding that, although the appellant was present when a juror asked to be excused for hardship based on his travel plans and when the trial court announced that the juror was being

excused for that reason, the appellant "had the right to be present at the [intervening] bench conference at which the juror's excusal was discussed"); Smith v. State, 298 Ga. 406, 409 (782 SE2d 269) (2016) (holding that, although the appellant was present for the factual development of the reason for a juror's removal, he had a right to be present when the court asked for legal argument and then removed the juror); Heywood, 292 Ga. at 774 (holding that, although the appellant did not have a right to be present at 12 bench conferences discussing "legal arguments regarding objections and proper trial procedure or logistical matters," he did have a right to be present at the one bench conference during which "the topic included whether to replace the prospective jurors"). Accordingly, our decision should not be read to cast doubt on the "well established" rule that a defendant who is not allowed to see and hear a proceeding during his trial "at which a juror is discussed and dismissed is not 'present' to the extent required under the federal and state Constitutions." Murphy v. State, 299 Ga. 238, 240 (787 SE2d 721) (2016). With this understanding, I join the Court's opinion in full.

I am authorized to state that Presiding Justice Melton and Justice Hunstein join in this concurrence.

Decided March 15, 2018 – Reconsideration

denied March 29, 2018.

Murder. Troup Superior Court. Before Judge Hightower.

Matthew K. Winchester, for appellant.

Peter J. Skandalakis, District Attorney, Monique L. Kirby, Edward A. Case III, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.