297 Ga. 386
FINAL COPY

S14G1868. PHILLIPS et al. v. HARMON et al.
S14G1893. HARMON et al. v. PHILLIPS et al.
S14G1895. HENRY MEDICAL CENTER v. PHILLIPS et al.


HINES, Presiding Justice.

This Court granted a writ of certiorari to the Court of Appeals in *Phillips Hector v. Harmon*, 328 Ga. App. 686 (760 SE2d 235) (2014), to determine if that Court properly held in this medical malpractice action: (1) that the trial court's communication to the jury outside the presence of counsel and the parties was reversible error (S14G1893; S14G1895), and (2) that the trial court did not abuse its discretion in its refusal to give plaintiffs' requested jury charge on spoliation (S14G1868). For the reasons that follow, we affirm in part and reverse in part the judgment of the Court of Appeals, and remand the case to that Court.

Lee V. Phillips IV ("Phillips") by and through his mother Santhonia Hector ("Hector"), and Hector individually (collectively "Plaintiffs"), brought this medical malpractice action against certified nurse midwife ("CNM") Marcia R. Harmon, Deborah E. Haynes, M.D., Eagles Landing OB-GYN Associates,

P.C., Eagles Landing OB-GYN Associates II, LLC, and Henry Medical Center, Inc. (collectively "Defendants"). Plaintiffs alleged that Defendants' negligence caused Phillips to suffer oxygen deprivation shortly before birth, resulting in severe, permanent neurological injuries, including spastic quadriplegia, blindness, and an inability to speak.

The case went to trial before a jury on August 20, 2012, and the jury returned a verdict for the Defendants on September 6, 2012, after approximately one-and-a-half days of deliberations. Plaintiffs filed a motion for a new trial, alleging that the trial court erred by engaging in a communication with the jury when neither the parties nor their attorneys were present, and by refusing to give their requested jury charge on the spoliation of evidence. The trial court denied the motion, and Plaintiffs appealed to the Court of Appeals.[1]

The Court of Appeals concluded that the trial court did not abuse its discretion in refusing to give Plaintiffs' requested charge on spoliation of evidence; however, it reversed the trial court's denial of Plaintiffs' motion for

---

[1] In their appeal to the Court of Appeals, Plaintiffs raised the additional claim that the Defendants improperly introduced evidence of collateral source benefits; however, the Court of Appeals found it unnecessary to consider such claim. In any event, the issue is not within the confines of this Court's grant of certiorari.

new trial after determining that Plaintiffs were entitled to a new trial because the trial court responded to a note from the jury during the course of their deliberations without ever advising the parties or their counsel that the communication had taken place.

*I. S14G1893; S14G1895. Communication with the Jury.*

The facts as found by the Court of Appeals with regard to the communication with the jury are the following. Several weeks after the jury verdict, two jurors contacted Plaintiffs' counsel regarding possible juror misconduct.[2] In that conversation, Plaintiffs' counsel learned for the first time that the trial judge had responded to a note from the jury without disclosing to the parties or their counsel the contents of the note or his response. Plaintiffs' counsel obtained affidavits from these two jurors, which affidavits averred that, on the second day of deliberations, the jury sent a note to the trial judge "indicating that [they] were not able to reach a unanimous verdict," and that the judge sent back a note instructing the jury to "continue deliberating."

---

[2] These jurors were concerned that another juror might have been sending and receiving text messages during deliberations. The Court of Appeals found that this issue was originally raised by Plaintiffs in their motion for a new trial, but that they did not assert any claim of error in this regard on appeal to the Court of Appeals.

Subsequently, Plaintiffs' counsel asked the trial judge to take measures to see that both the jury note and the judge's responsive note were filed with the clerk of court. After realizing that the court reporter did not have a copy of the jury's note, the trial judge, without holding a hearing or seeking any input from the parties' counsel, entered an order supplementing the record pursuant to OCGA § 5-6-41 (d).[3] The order recited that four notes were delivered to the court during deliberations and that three of them were preserved and made part of the record, but that the note regarding the jury's inability to reach a unanimous verdict was not one of them. The order stated that the missing note read, "What happens if we can't reach a unanimous verdict," and was delivered

_____

[3] OCGA § 5-6-41 (d) provides:

> Where a trial in any civil or criminal case is reported by a court reporter, all motions, colloquies, objections, rulings, evidence, whether admitted or stricken on objection or otherwise, copies or summaries of all documentary evidence, the charge of the court, and all other proceedings which may be called in question on appeal or other posttrial procedure shall be reported; and, where the report is transcribed, all such matters shall be included in the written transcript, it being the intention of this article that all these matters appear in the record. Where matters occur which were not reported, such as objections to oral argument, misconduct of the jury, or other like instances, the court, upon motion of either party, shall require that a transcript of these matters be made and included as a part of the record. The transcript of proceedings shall not be reduced to narrative form unless by agreement of counsel; but, where the trial is not reported or the transcript of the proceedings for any other reason is not available and the evidence is prepared from recollection, it may be prepared in narrative form.

to the court immediately after lunch recess on the first day of jury deliberations; due to the fact that the note did not actually indicate that the jury was "hung," and in view of the short amount of time that the jury had been deliberating after the lengthy trial, the trial judge did not believe it was necessary to consult with counsel about his response; therefore, the trial judge wrote on the same piece of paper, "please continue deliberating," and had the bailiff return the note to the jury. The trial judge also stated that the note had remained with the jury, and presumably was destroyed along with the jurors' personal notes, as instructed by the bailiff after return of the verdict.

Plaintiffs moved to recuse or disqualify the trial judge due to the perceived conflict between the jurors' affidavits and the trial judge's order supplementing the record. The trial judge granted the motion, and the case was reassigned. Following a hearing on Plaintiffs' motion for new trial, the assigned judge rejected Plaintiffs' claim that the trial judge's communication with the jury outside the presence of Plaintiffs or counsel was per se reversible error, and concluded that Plaintiffs were not entitled to a new trial because the note was not impermissibly misleading or coercive. However, in denying the motion for new trial, the trial court noted that the evidence in the case was "close" and

would have supported a verdict for either Plaintiffs or Defendants.

After a lengthy analysis which examined the right of a natural party to be present in the courtroom during trial, and the applicability of a presumption of prejudice or harmless error review, the Court of Appeals concluded that the particular and unique circumstances surrounding the communication in this case warranted a new trial. And, the Court was correct to do so.

*A. Right to be Present*

As the Court of Appeals properly noted, in *Kesterson v. Jarrett*, 291 Ga. 380 (728 SE2d 557) (2012), this Court steadfastly reaffirmed the right of a natural party to be present in the courtroom when the party's case is being tried as such right,

> is deeply rooted in the law of this Nation and, if anything, even more embedded in the law of this State. It has been treated as a component of the due process of law in both criminal and civil cases since the early decisions of this Court. The right to be present is also reflected textually in our State Constitution, in the provision guaranteeing to every person "the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state." Ga. Const. of 1983, Art. I, Sec. I, Par. XII.[4]

---

[4] Ga. Const. of 1983, Art. I, Sec. I, Par. XII provides: "No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state."

Id. at 384 (2) (a) (Internal citations omitted.) *Kesterson* was also a medical malpractice case in which it was alleged that a child suffered neurological injuries caused by oxygen deprivation shortly before birth as the result of the defendant medical providers' negligence in failing to timely recognize signs of fetal distress. The trial court excluded the young child from most of the liability phase of the trial of the lawsuit after the defendants moved to so exclude the child from the courtroom on the basis that the child's presence would be prejudicial to them. Id. at 382 (1). The Court of Appeals affirmed that ruling after applying a test which gave the trial court discretion to exclude a civil party when the party's physical and mental condition might generate sympathy from the jury and the party's mental condition precludes meaningful participation in and understanding of the proceedings. See *Kesterson v. Jarrett*, 307 Ga. App. 244, 248-251 (1) (b) (704 SE2d 878) (2010). So, the issue before this Court on certiorari was whether a party might be denied the right to be present in court during the trial of the party's case and excluded from the courtroom because the party's physical and mental condition might evoke undue sympathy from the

jury, and thereby improperly prejudice the other side. *Kesterson*, 291 Ga. at 380-381. This Court reversed and remanded the case to the Court of Appeals after concluding that a party could not be excluded from the party's own trial simply because the party's physical and mental condition might evoke sympathy, and that there were other means to ensure a fair trial without infringing on the party's right to be present. Id. at 381. Thus, in those circumstances the right to be present was deemed paramount.

*Kesterson,* however, did not directly address the situation at bar, that is, the right of a party in a civil case to be present when the trial judge engages in communications with the jury. But, as a general matter, parties to civil actions in Georgia have the right to be present at all stages of the trial of the action. *Willingham v. Willingham*, 192 Ga. 405, 408 (1) (15 SE2d 514) (1941); *Cox v. Yates*, 96 Ga. App. 466 (3) (100 SE2d 649) (1957). And, in a civil proceeding this is so in order, inter alia, that the party be able to render assistance to his counsel as developments unfold. *Mays v. Tharpe & Brooks, Inc.*, 143 Ga. App. 815, 816 (240 SE2d 159) (1977).

As noted by the Court of Appeals, the right to be present in the context of communications between the trial judge and jury has been clearly determined

in criminal cases. In *Hanifa v. State*, 269 Ga. 797, 806-808 (6) (505 SE2d 731) (1998), this Court squarely addressed the right of the criminal defendant to be present during the trial judge's communications with the jury. Defendant Hanifa contended that the trial judge committed reversible error when the judge suspended the State's closing argument, left the bench, and returned some time later, informing counsel and their clients that the judge had been to "visit with the jury" whose condition the judge described as "fragile." Id. at 806 (6). Even though this Court concluded that Hanifa waived the right to appellate review of this issue because she failed to object or seek a mistrial after being informed by the trial judge of the communication with the jury, this Court nevertheless unequivocally affirmed a criminal defendant's "right to be present, and see and hear, all the proceedings which are had against him on the trial before the Court," and that "[a] colloquy between the trial judge and the jury is a part of the proceedings to which the defendant and counsel are entitled to be present." Id. at 807 (6) (Punctuation omitted.) In so doing, this Court strongly admonished trial judges about engaging in such communications with the jury outside the presence of the parties and their counsel, stating,

[u]questionably the trial judge should not in any manner

9

communicate with the jury about the case, in the absence of the accused and his counsel, pending the trial; and the better practice is for the judge to have no communication with the jury on any subject except through the medium of the sworn bailiff in charge of the jury; and the communication should be restricted, in the absence of the accused and his counsel, to matters relating to the comfort and convenience of the jury. There should be no communication which would tend in any manner to prejudice the accused . . . ; and unless the character of the communication clearly shows that it could not have been prejudicial to the accused, the presumption of law would be that it was prejudicial. . . . We state again: "all communications with the jury are to be discouraged except in open court with all persons present. . . ."

*Hanifa* at 807 (6) (Citation omitted.) Indeed, "[a] trial court's communication with a jury on substantive matters is a part of the proceedings to which the defendant and counsel are entitled to be present." *Lowery v. State*, 282 Ga. 68, 73 (4) (b) (646 SE2d 67) (2007). And, a jury communication regarding its inability to reach a verdict has been deemed a substantive matter for the purpose of a defendant's right to be present. Id. at 74 (4) (b) (i); accord *Wells v. State*, 297 Ga. App. 153, 159-160 (2) (676 SE2d 821) (2009).

This Court cannot sanction communications of a substantive nature between a trial judge and a jury outside the presence of the defendant and counsel in a criminal trial, and it should not do so in a civil trial as such actions

are no less a violation of a party's right to be present during trial. Furthermore, as this Court expressed in *Kesterson*:

> There is . . . a personal element to the right to be present. The right is based not only on what the party can do to the case, but on what the case will do to the party. It is the party's interests that are being determined by the jury and the judge, and it is the party's life that will be directly affected by the outcome of the case.

291 Ga. at 392 (2) (f) (emphasis omitted). The Court of Appeals correctly concluded that the right to be present in regard to the jury communication was totally denied in this case, and that although the duration of the exclusion was briefer than in *Kesterson*, the present violation was "more absolute" in that, unlike in *Kesterson*, where the plaintiff had her attorneys present and representing her during trial, these Plaintiffs were wholly without any representation or input during the trial court's communication with the jury. *Phillips*, 328 Ga. App. at 691 (1) (b).

## *B. Harm*

The Court of Appeals held that this violation of Plaintiffs' right to be present at trial required reversal and a new trial; it did so both by presuming prejudice as a matter of law, as has been done in criminal cases involving jury communications that violated a defendant's right to be present except where

11

"'the character of the communication clearly shows that it could not have been prejudicial to the accused,'" *Hanifa* at 807 (6) (citation omitted), and alternatively, by undertaking a harmless-error analysis generally applicable to errors in civil cases as set forth in OCGA § 9-11-61.[5] It is unnecessary for this Court to decide whether the criminal precedents regarding the presumption of prejudice should be extended into the civil arena in a case such as this because we agree with the Court of Appeals that, under the unique circumstances of this case, the error was harmful.

It has been aptly observed that OCGA § 9-11-61 "exhorts" the appellate courts to disregard errors or defects in the proceeding which do not affect the substantial rights of the parties, but leaves open the question of how to determine when an error affected the parties' "substantial rights" or that the failure to correct the error was "inconsistent with substantial justice." *Thomas*

---

[5] OCGA § 9-11-61, which is part of the Civil Practice Act and to which there is no counterpart in the Criminal Code, provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

*v. Emory Clinic*, 321 Ga. App. 457, 460 (1) (d) (739 SE2d 138) (2013) (physical

precedent only).  Indeed, "whether an error requires reversal depends on the

nature of the error and the importance of the issue to which it applies."  Id. at

461 (1).  As the Court of Appeals observed in the present case,

> a critical difference exists between many of the cases in which our
> appellate courts have deemed a right to be present violation
> harmless or waived and the case at hand, which is that those
> communications were in fact disclosed to the defendant and/or his
> attorney prior to the time the jury returned its verdict. Depending on
> the time of this disclosure, this afforded the defendant or his
> counsel the opportunity to have input concerning the court's
> response, request that the court query the jury about the potential
> deadlock, object, move for a mistrial, or at a minimum, and
> importantly here, preserve a record of the communication. And if
> the defendant or his attorney was told of the communication prior
> to the return of the verdict and they failed to act, a waiver of the
> right to be present violation would  occur.

*Phillips*, 328 Ga. App. at 693-694 (1) (d) (Citations omitted.) In this case, upon

learning of the communication, Plaintiffs' counsel took diligent action to have

the communication made a part of the record, but through no fault of Plaintiffs

or counsel, was unable to secure the actual communication. Thus, as the Court

of Appeals stated,

> this case presents one of those rare circumstances where the party
> who asserts they have been aggrieved has been effectively
> precluded from demonstrating harm. Such an inability of a party to

prove they were harmed by an ex parte judge/jury communication obviously "affect[s] the substantial rights."

*Phillips*, 328 Ga. App. at 696-697 (1) (e).[6]

In sum, the unique circumstances of this case, which include the untimely and serendipitous disclosure of the communication to Plaintiffs or their counsel; Plaintiffs' inability to make the actual note or response a part of the record; the differing recollections about the nature and timing of the communication; the failure to resolve the perceived conflicts; and the inability to make a determination that a verdict for Defendants was demanded, regardless of any effect of the communication on the jury, support Plaintiffs' entitlement to a new trial.

## II. S14G1868. Spoliation.

The term "spoliation" is used to refer to "the destruction or failure to preserve evidence" that is relevant to "contemplated or pending litigation."

---

[6] As the Court of Appeals noted, there is no reason to question the trial judge's good faith in attempting to supplement the record pursuant to OCGA § 5-6-41 (d); however, by its express terms that section does not lend itself to the present circumstances in which there are apparent discrepancies between the recollections of the jury and the trial judge about a communication that occurred between them. And, although subsection (g) of the statute makes the trial judge the final arbiter in a dispute between the parties in regard to the correctness of a transcript prepared from recollection, this statutory provision does not address this situation in which there is apparent conflict between the recollections of the trial judge and jurors.

*Silman v. Assoc. Bellemeade*, 286 Ga. 27, 28 (685 SE2d 277) (2009). Such conduct may give rise to the rebuttable presumption that the evidence would have been harmful to the spoliator. *Lane v. Montgomery Elevator Co.*, 225 Ga. App. 523, 525 (1) (484 SE2d 249) (1997). See OCGA § 24-14-22[7] (formerly OCGA § 24-4-22). However, in order for the injured party to pursue a remedy for spoliation, the spoliating party must have been under a duty to preserve the evidence at issue. *Whitfield v. Tequila Mexican Restaurant No. 1*, 323 Ga. App. 801, 807 (6) (748 SE2d 281) (2013).

The destroyed evidence at issue in this case was printed paper strips of the electronic monitoring of Phillips's fetal heart rate. Plaintiffs alleged that Defendants acted negligently in monitoring and responding to Phillips's heart decelerations and periods of bradycardia, which are signs of fetal distress. Acute, sustained bradycardia can cause brain damage as a result of oxygen deprivation, and generally the longer it lasts, the greater the potential brain damage.

---

[7] OCGA § 24-14-22 provides:
> If a party has evidence in such party's power and within such party's reach by which he or she may repel a claim or charge against him or her but omits to produce it or if such party has more certain and satisfactory evidence in his or her power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against such party is well founded; but this presumption may be rebutted.

15

At the time of Phillips's birth, the medical records at Henry Medical Center were maintained electronically. Nevertheless, the nurses often took notes on paper fetal monitor strips during labor and delivery. And even though these strips were not considered a part of the official record, the nurses would refer back to their notes to complete the official record. Henry Medical Center maintained the strips for 30 days post-delivery, and then would routinely destroy them. The strips at issue were destroyed pursuant to this procedure.

There was some evidence in this case that there were nursing notations on the printed strips, not part of the electronic record, which were relevant, inter alia, to the timeliness of medical response to Phillips's signs of fetal distress, and thus, relevant and arguably critical to Plaintiffs' claim of Defendants' failure to adhere to the appropriate standard of care. Plaintiffs requested that the following charge be given to the jury:

> Defendant Henry Medical Center destroyed the printed paper copy of the fetal heart rate tracing sometime after the delivery of Lee V. Phillips, IV. At the time Defendant Henry Medical Center destroyed the printed paper copy of the fetal heart rate tracing, Defendant Henry Medical Center was aware of the potential for litigation. The Plaintiffs are entitled to a presumption that the printed paper copy of the fetal heart rate tracing, which contained the handwritten notes that [nurse] Kim Jones made during the labor at issue in this case, would have been prejudicial to Defendant Henry Medical Center. The presumption may be rebutted by

16

Defendant Henry Medical Center.

The trial court declined to give the charge, after finding that Defendants had "no knowledge or notice of potential litigation";[8] however, it permitted the parties to present evidence and argument concerning the notes made on the fetal monitor paper strips, the use of the strips in creating the official medical record, and the destruction of the strips.

On appeal to the Court of Appeals, Plaintiffs maintained that it was error to refuse to give its requested charge because Henry Medical Center's actions after Phillips's birth showed that it was contemplating litigation regarding the delivery at the time it destroyed the records. In support, Plaintiffs cited Henry Medical Center's triggering of its Sentinel Events/Medical Errors/Disclosures policies and procedures ("Sentinel Events Policies") immediately after Phillips's birth, and in accordance with such policies, its launching of an internal investigation, which involved questioning of involved personnel, its subsequent notification to its insurance carrier, and its contacting legal counsel shortly thereafter. Plaintiffs argued that once the Sentinel Events Policies were

---

[8] The trial court made statements to the effect that the law would not permit it to give a charge on spoliation as notice of a claim or litigation had not been given the Defendants.

triggered, Henry Medical Center was required to "obtain and/or preserve evidence, as appropriate (for example, photographs, equipment, supplies, etc.)" and to protect "[t]he medical record and other potential evidence . . . as needed in anticipation of possible litigation." Plaintiffs further urged that they presented evidence that risk management would "sometimes" request that the fetal monitor strips be preserved, although no such request was made in this case.

The Court of Appeals concluded that Henry Medical Center did not have notice of "pending or contemplated" litigation at the time of its destruction of the paper fetal monitor strips, and consequently, that it was not an abuse of the trial court's discretion to refuse to give Plaintiffs' requested charge on spoliation of evidence. In so doing, the Court of Appeals cited its own precedent for the proposition that merely launching an internal investigation and taking some steps pursuant to company policies do not, without more, equate to notice that litigation is contemplated or pending, and that the mere fact that someone is injured, without more, is not notice that the injured party is contemplating litigation sufficient to automatically trigger the rules of spoliation. *Phillips*, 328 Ga. App. at 699-700 (2). It also concluded that this Court's decision in *Baxley*

18

*v. Hakiel Indus.*, 282 Ga. 312 (647 SE2d 29) (2007), as further discussed in *Silman* v. *Assoc. Bellemeade,* supra at 28, did not mandate a finding of spoliation in that the phrase "potential for litigation" used in *Baxley* refers to litigation that is actually "contemplated or pending," and "nothing more." 328 Ga. App. at 701. But, the Court of Appeals's analysis and conclusion miss the mark. Although the Court of Appeals was correct in concluding that *Silman* clarified that in saying "potential for litigation" *Baxley* meant "contemplated or pending" litigation, it erred in interpreting that standard, and consequently, in applying it to the facts of this case.

Logically, the duty to preserve relevant evidence must be viewed from the perspective of the party with control of the evidence and is triggered not only when litigation is pending but when it is reasonably foreseeable to that party. See *Graff v. Baja Marine Corp*., 310 Fed. Appx. 298, 301 (11th Cir. 2009); *West v. Goodyear Tire & Rubber Co.*, 167 F3d 776, 779 (2d Cir. 1999) (Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in litigation that is pending or reasonably foreseeable.) However, to say merely that the duty arises when litigation is "contemplated or pending" does not answer the question as to which party is

19

doing the "contemplating," that is, anticipating the litigation.

In regard to the injured party, usually the plaintiff, the duty arises when that party contemplates litigation, inasmuch as litigation is obviously forseeable to the plaintiff at that point. As to the opposing party, usually the defendant, the duty arises when it knows or reasonably should know that the injured party, the plaintiff, is in fact contemplating litigation, which the cases often refer to in terms of "notice" to the defendant. See, e.g., *Hand v. South Georgia Urology Center, P.C.*, 332 Ga. App. 148 (769 SE2d 814) (2015); *Allen v. Zion Baptist Church of Braselton*, 328 Ga. App. 208, 216-217 (3) (761 SE2d 605) (2014). Certainly, the defendant's knowledge that the plaintiff is contemplating litigation may come when the plaintiff provides *actual or express* notice of litigation. And, such notice can be constructive as well as actual. Indeed, *Baxley* correctly identified two concepts: that notice in the context of spoliation can be constructive and that actual notice of contemplated litigation from the plaintiff to the defendant is not the only way that the defendant may reasonably foresee litigation, but rather, that the defendant's actions may be relevant to that

determination, that is, that such actions may demonstrate constructive notice.[9]

Notice that the plaintiff is contemplating litigation may also be derived from, i.e., litigation may be reasonably foreseeable to the defendant based on, other circumstances, such as the type and extent of the injury; the extent to which fault for the injury is clear; the potential financial exposure if faced with a finding of liability; the relationship and course of conduct between the parties, including past litigation or threatened litigation; and the frequency with which litigation occurs in similar circumstances. Thus, it may be appropriate to consider, in determining whether the defendant actually did or reasonably should have foreseen litigation by the plaintiff, not only what the plaintiff did or did not do after the injury and before the evidence in question was lost or destroyed, but also what the defendant did or did not do in response to the injury, including the initiation and extent of any internal investigation, the reasons for any notification of counsel and insurers, and any expression by the

---

[9] The full facts of *Baxley* may not be clear from the face of the opinion, but *Baxley* should not be read to hold that *merely* an injury and subsequent questioning of employees by a manager about what happened regarding the injurious event triggers the duty to preserve evidence. The defendant's duty also does not arise *merely* because the defendant investigated the incident, because there may be many reasons to investigate incidents causing injuries, from simple curiosity to quality assurance to preparation for possible litigation.

defendant that it was acting in anticipation of litigation. It is undisputed that at the time the strips were destroyed, Henry Medical Center had not received express or actual notice from Plaintiffs that litigation was being planned, pursued, or pending. Again, the duty to preserve relevant evidence arises when litigation is reasonably foreseeable to the party in control of that evidence, and thus while actual notice of litigation from the plaintiffs would clearly make such litigation foreseeable, other circumstances may show that the defendant/alleged tortfeasor actually or reasonably should have anticipated litigation, even without notice of a claim being provided by the injured party/plaintiff.

Certainly a trial court has wide discretion in adjudicating spoliation issues, and such discretion will not be disturbed absent abuse. *Hand*, 332 Ga. App. at 156. However, an appellate court cannot affirm a trial court's reasoning which is based upon an erroneous legal theory. *Amin v. Guruom*, 280 Ga. 873, 875 (635 SE2d 105) (2006).

Here, the trial court's exercise of discretion in ruling that Defendants had no duty to preserve the paper fetal monitor strips, and the Court of Appeals's upholding of that ruling, appear to rest on the legally incorrect premise that a defendant's duty to preserve evidence required notice of a claim or litigation

22

*from the plaintiff*, i.e., actual notice, without regard to other circumstances, such as the type and extent of the injuries (severe injuries to a newborn child after an unexpectedly difficult delivery), the high damages that can flow from such injuries, the frequency of litigation in these circumstances, and the defendant's internal investigation and notification to its counsel and insurer. Consequently, the judgment of the Court of Appeals in regard to the spoliation issue cannot be upheld, and to the extent that the Court of Appeals cases dealing with the issue of spoliation may be read as endorsing the erroneous analysis used in this case, they are hereby disapproved in that regard.[10]

Although the spoliation issue may recur upon any retrial of the present case, the evidence presented on this issue may be different, and the trial court will have to exercise its discretion based on the evidence presented to it, guided

---

[10] Such cases include, but are not limited to, *Hand v. South Georgia Urology Center, P.C.*, 332 Ga. App. at 155 (2); *Whitfield v. Tequila Mexican Restaurant No. 1*, 323 Ga. App. at 806-808 (2); *Clayton County v. Austin-Powell,* 321 Ga. App. 12, 16-17 (2) (740 SE2d 831) (2013); *Powers v. Southern Family Markets of Eastman, LLC*, 320 Ga. App. 478, 479-480 (1) (740 SE2d 214) (2013); *Flores v. Exprezit!A Stores 98-Georgia, LLC*, 314 Ga. App. 570, 573 (2) (724 SE2d 870) (2012); *Paggett v. Kroger Co.*, 311 Ga. App. 690, 692-693 (2) (716 SE2d 792) (2011); *Craig v. Bailey Bros. Realty,* 304 Ga. App. 794, 797 (1) (697 SE2d 888) (2010).

by the discussion in this opinion.[11] It should also be noted that this Court has held that a rebuttable presumption or adverse inference jury instruction such as the one requested in this case is to be given as a remedy for spoliation of evidence "only in exceptional cases," that "the greatest caution must be exercised in its application," and that "[e]ach case must stand upon its own particular facts." *Cotton States Fertilizer Co. v. Childs*, 179 Ga. 23, 31 (174 SE 708) (1934). And, the Court of Appeals has explained that in considering the giving of such an instruction, the trial court should consider both prejudice to the party seeking the charge and "whether the party who destroyed the evidence acted in good or bad faith." *Johnson v. Riverdale Anesthesia Assocs.,* 249 Ga. App. 152, 154 (2) (547 SE2d 347) (2001). The good or bad faith of the party

> is a relevant consideration because one of the rationales for the presumption is that it deter[s] parties from pretrial spoliation of evidence and serves as a penalty, placing the risk of an erroneous judgment on the party that *wrongfully* created the risk. But, [a] party should only be penalized for destroying the documents if it was wrong to do so.

Id. (Citation and punctuation omitted; emphasis in original). But see *AMLI Residential Properties v. Georgia Power Co.*, 293 Ga. App. 358, 363 (1) (a) (iii)

---

[11] This Court expresses no view on what that decision should be.

(667 SE2d 150) (2008) ("Exclusionary sanctions may be appropriate where the spoliator has not acted in bad faith.").[12]

Accordingly, the judgment of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded to the Court of Appeals for proceedings consistent with this opinion.

Judgment affirmed in part and reversed in part, and case remanded. All the Justices concur.

Decided June 29, 2015.

Certiorari to the Court of Appeals of Georgia – 328 Ga. App. 686.

Grant Law Office, Wayne Grant, Kimberly W. Grant; The Parrish Law Firm, Jonathan A. Parrish, for Phillips et al.

Huff, Powell & Bailey, Michael S. Bailey, Anna B. Fretwell, for Harmon

---

[12] In *AMLI Residential Properties v. Georgia Power Co.*, the Court of Appeals cited five factors that a trial court should weigh before exercising its discretion to impose sanctions for spoliation: (1) whether the party seeking sanctions was prejudiced as a result of the destroyed evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the destroying party acted in good or bad faith; and (5) the potential for abuse if any expert testimony about the destroyed evidence was not excluded. Id. at 361 (1).

et al.

Hall, Booth, Smith, John E. Hall, Jr., W. Scott Henwood, Wark W. Wortham, Nathan A. Gaffney, for Henry Medical Center, Inc.