**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 13, 2024**

# In the Court of Appeals of Georgia

A23A1597. GOLDEN PANTRY FOOD STORES, INC. v. BRADLEY.

A23A1598. GOLDEN PANTRY FOOD STORES, INC. v. STARK.

MERCIER, Chief Judge.

In these premises liability actions, Golden Pantry Food Stores, Inc. appeals the trial court's grant of separate motions for spoliation sanctions filed by Caroline Bradley and Libby Stark (collectively "Plaintiffs"). Because the trial court employed an incorrect standard of review when deciding Plaintiffs' motions, we must vacate the order granting spoliation sanctions in each case and remand both cases for application of the proper standard.

In a nutshell, the record shows that each of the Plaintiffs brought a premises liability action against Golden Pantry because they were violently attacked and injured

by Eric Keith Mitchell while shopping in one of Golden Pantry's convenience stores. Shortly after being injured by Mitchell, Plaintiffs, prior to filing their lawsuits, sent letters to Golden Pantry requesting that it preserve video surveillance footage of the attack. In addition, Bradley requested preservation of surveillance footage going back to 30 days prior to the attack, and Stark requested preservation of the preceding five years of footage. After consulting its insurance carrier and attorney, Golden Pantry, in accordance with its internal policies, chose to only preserve nine minutes of surveillance footage that included the attack itself and several minutes surrounding it.

Subsequently, Plaintiffs filed separate pre-trial motions for spoliation sanctions, contending that there was evidence that Mitchell had been in the store and acting erratically approximately 30 minutes prior to the attack. Plaintiffs further contended that surveillance footage taken prior to the attacks could have verified this fact, thereby supporting an argument that Plaintiffs' attacks were foreseeable to Golden Pantry and preventable. And, finally, Plaintiffs argued that Golden Pantry committed spoliation by failing to preserve surveillance footage that might show any prior visit

to the store by Mitchell, and, as a consequence of this spoliation, a default judgment should be entered against Golden Pantry.[1]

During a non-evidentiary hearing on these motions, the trial court considered witness affidavits and deposition testimony from both parties. Thereafter, the trial court granted Plaintiffs' motions and sanctioned Golden Pantry by striking its answers and entering default judgments against it. Following our subsequent grant of Golden Pantry's applications for an interlocutory review in both cases, these appeals, consolidated for review, ensued.

Among other things, Golden Pantry contends that the trial court employed the wrong standard of review when considering the Plaintiffs' motions. We agree.[2] The proper standard of review for cases in the posture of the current matter is settled. Here, Plaintiffs filed

> pretrial motion[s] to . . . impose . . . sanctions for spoliation, but did not request an evidentiary hearing on the motion. In resolving the motion, the trial court, without objection, considered matters outside the

---

[1] The term "spoliation" is used to refer to "the destruction or failure to preserve evidence" that is relevant to "contemplated or pending litigation." *Silman v. Assoc. Bellemeade*, 286 Ga. 27, 28 (685 SE2d 277) (2009).

[2] Given this conclusion, we need not reach any of Golden Pantry's other arguments, all of which deal with the propriety of the ruling that this appeal vacates.

pleadings, including witness affidavits and depositions, but did not hold an evidentiary hearing at which the court could decide the credibility of those witnesses. Thus, under the circumstances presented here, the motion is properly reviewed under the standard applicable to a motion for summary judgment, and as the party opposing the motion, [Golden Pantry] is entitled to have the evidence in the record viewed in the light most favorable to [it] and to have all reasonable inferences from the evidence drawn in [its] favor.

*Cooper Tire & Rubber Co. v. Koch*, 303 Ga. 336, 344 (3) (812 SE2d 256) (2018).[3]

On the face of its orders, which are largely identical in both cases, the trial court does not state the standard of review it employed to determine both that Golden Pantry spoliated evidence and that it should be subject to the most severe sanction possible – the entry of default judgment against it. In the absence of an expressly stated standard of review, we do not automatically presume that an incorrect standard of review has been applied. To the contrary, in the absence of evidence otherwise, we generally assume that a trial court knows and follows the correct law. See *Wilson v. State*, 302 Ga. 106, 108 (II) (a) (805 SE2d 98) (2017) ("[I]n the absence of affirmative

---

[3] OCGA § 9-11-56 (c) provides that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law; but nothing in this Code section shall be construed as denying to any party the right to trial by jury where there are substantial issues of fact to be determined.

evidence to the contrary," an appellate court will presume "that the trial court understood the nature of its discretion and exercised it.") (citations and punctuation omitted). In this case, however, the trial court's orders on spoliation contain statements and conclusions indicating that the trial court considered evidence in the light most favorable to the Plaintiffs, not Golden Pantry, and in the light most favorable to a finding of spoliation by Golden Pantry. This was improper, as further discussed below.

Pivotal to Plaintiffs' spoliation claims is the factual question of whether the Mitchell had previously visited the Golden Pantry store where the attack occurred and whether he acted strangely during such a visit, thereby raising a corollary legal question of whether the attack was reasonably foreseeable by Golden Pantry. In turn, the answer to this question also informs the issue of whether surveillance footage of events occurring in the store well prior to the attack have any relevance to Plaintiffs' premises liability lawsuits and whether Golden Pantry "fail[ed] to preserve evidence that is relevant" by preserving only nine minutes of footage featuring the Plaintiffs being attacked by Mitchell. *Phillips v. Harmon*, 297 Ga. 386, 393 (774 SE2d 596) (2015) (defining "spoliation"). With regard to this pivotal concern, Golden Pantry offered

the affidavit and deposition testimony of four witnesses, including Odonia Furcron, the clerk on duty at the time of the attack, and Mitchell, the assailant. Mitchell stated in his affidavit: "On May 24, 2020, around 9:00 p.m., I walked from my house to the Golden Pantry convenience store located at 126 N. Milledge Avenue, Athens, Georgia 30601. . . . This was the first and only time I went to this Golden Pantry on May 24, 2020."[4] Similarly, Furcron, the store clerk, deposed that Mitchell entered the store just "a few minutes" before the attack and that, prior to this time, she had not seen Mitchell in the store. On the other hand, the Plaintiffs offered the deposition testimony of Grace Tippins, a frequent patron of the store. Tippins deposed that she believed that she visited the store around 8:30 p.m. on the night of the attack, Mitchell was already in the store at that time and behaving erratically, and Furcron appeared to be terrified of him. So, the witness testimony presented by the Plaintiffs is *directly contrary* to the witness testimony provided by Golden Pantry with regard to Mitchell's presence in the store prior to the attacks. This creates a question of fact that can only be answered by a *credibility* determination, which the trial court could not make in the absence of an evidentiary hearing. Id.

---

[4] The nine minutes of footage preserved by Golden Pantry shows Mitchell entering the store at 9:12 p.m.

Nonetheless, the trial court's orders on spoliation state:

> Even though Golden Pantry points to witnesses who testified that they did not see Mr. Mitchell on the property prior to the incident, those witness[es] do not establish conclusively that he was not on the property. Similarly, Mr. Mitchell's Affidavit does not establish conclusively that he had not been on the property especially *in light of the conflicting testimony of Grace Tippins*. (Emphasis supplied.)

The orders then go on to find that

> the testimony of Grace Tippins establishes questions of fact exist as to Mr. Mitchell's presence on the property and Golden Pantry's knowledge of his erratic behavior. This testimony confirms the importance of the lost video recordings and the prejudice that results to Plaintiff.

In addition, the orders make the following inference:

> The [c]ourt finds the prejudice cannot be cured because the Plaintiff must establish the foreseeability that Mr. Mitchell was a threat. While Ms. Tippins could provide testimony to this issue, the videos *may have* provided important additional evidence to support Plaintiffs claim.

(Emphasis supplied.)

This analysis violates the appropriate standard of review in several ways. First, it expressly considers the evidence in the light most favorable to Plaintiffs, not Golden Pantry, by emphasizing Tippins's testimony. Second, rather than drawing all reasonable inferences in favor of Golden Pantry and a finding that spoliation did not occur, the trial court's order draws inferences in favor of Plaintiffs and *against* Golden

Pantry that (a) Mitchell might have been in the store and acting erratically at some point earlier than the time of the attack and (b) based on Tippens's testimony, the surveillance footage that was not preserved could possibly contain footage of these prior visits. And, third, the trial court's analysis entails an underlying credibility determination that Tippins's testimony should be given more weight than the directly contrary testimony of the store clerk, the assailant, and Golden Pantry's additional witnesses. In short, the trial court expressly viewed the evidence, and inferences from that evidence, in the light most favorable to Plaintiffs and their allegations of spoliation, while also crediting Tippins's testimony over that of Golden Pantry's witnesses. This was simply not the appropriate standard of review. *Koch*, 303 Ga. at 344 (3).

In summation, the proper standard of review required the trial court to view the evidence and all reasonable inferences from that evidence in favor of Golden Pantry without making credibility determinations. The trial court did not employ this standard. Accordingly, the trial court's order on spoliation must be vacated in each

case in its entirety, and these cases must be remanded for the application of the appropriate standard to Plaintiffs' spoliation claims.[5]

*Judgments vacated and cases remanded with direction. Miller, P. J., concurs. Hodges, J., dissents.*

---

[5] If the trial court concludes that credibility determinations are required on remand, an evidentiary hearing must first be held. *Koch*, 303 Ga. at 344 (3).

A23A1597. GOLDEN PANTRY FOOD STORES, INC. v.
    BRADLEY.
A23A1598. GOLDEN PANTRY FOOD STORES INC. v. STARK.

HODGES, Judge.

The majority opinion is based wholly upon an issue that Golden Pantry did not argue on appeal and never enumerated as error.

The majority finds that the trial court applied the wrong standard of review in examining conflicts in witness testimony regarding whether Eric Keith Mitchell had previously been to the store and exhibited erratic or threatening behavior that could have made his brutal attack on Caroline Bradley and Libby Stark foreseeable. But our Supreme Court has determined that "[m]atters not enumerated as error will not be considered on appeal." *Adamson v. Sanders*, 279 Ga. 187, 188 (611 SE2d 44) (2005); see *Grogan v. City of Dawsonville*, 305 Ga. 79, 89 (4), n. 7 (823 SE2d 763) (2019) (explaining that Court will not address potential issue or argument not raised on appeal). "[I]t is almost always a better course to decide the appeal the parties bring us, rather than the appeal we might have brought were we in counsel's shoes." *Davenport v. State*, 309 Ga. 385, 398 (4) (b) (846 SE2d 83) (2020). For this reason, I respectfully dissent.

As the trial court determined, "[t]he recordings of what happened on the property before plaintiff[s] arrived at the store were relevant to the contemplated litigation." On appeal, Golden Pantry raised no challenge to the trial court's analysis of the conflicting witness statements, or to its finding that the now-destroyed video evidence (which could have resolved the conflict in the witnesses' testimony, one way or the other) was relevant.

Rather, Golden Pantry presented specific argument in this context *only* on the issue of whether it knew that the prior videos were relevant at the time the plaintiffs' lawyers sent letters asking the company to preserve these videos. It is true that Golden Pantry specifically argued that the trial court erred in finding that it failed to satisfy its duty to preserve relevant evidence. But, again, it did not challenge the trial court's finding that the now-destroyed evidence *was* relevant.

This means that our Court was authorized only to review the trial court's findings regarding *what Golden Pantry believed* about the now-destroyed videos' relevance at the time it received the plaintiffs' preservation letters and allowed the videos to be destroyed. This is not the same as a challenge to the trial court's analysis of the conflicting witness testimony in determining *whether the videos themselves were relevant* — the issue upon which the majority opinion turns.

2

Of course, as the majority points out, because the trial court considered matters outside the pleadings, it was required to view the evidence in the light most favorable to Golden Pantry. See *Cooper Tire & Rubber Co. v. Koch*, 303 Ga. 336, 344 (3) (812 SE2d 256) (2018); accord *United Parcel Service of America v. Whitlock*, 366 Ga. App. 542, 556 (2) (a) (i) (883 SE2d 556) (2023). The majority posits that the trial court's order must be vacated and remanded because the court was required to hold an evidentiary hearing on the conflicting witness testimony, which presents a credibility issue. The case the majority cites for this proposition, *Phillips v. Harmon*, 297 Ga. 386 (774 SE2d 596) (2015), does not address this issue. Rather, as this Court determined in *Whitlock*, 366 Ga. App. at 557 (2) (a) (ii), a trial court "should evaluate the credibility of all pertinent witnesses through an evidentiary hearing *or review the issue under the standard applicable to a motion for summary judgment*." (Emphasis supplied.) To the extent the appeal raises the issue of the credibility of Golden Pantry's own witnesses in relation to its argument that it did not recognize the videos' relevance when it failed to preserve them, the trial court indeed reviewed that issue in the light most favorable to Golden Pantry, which comports with the summary judgment standard.

Golden Pantry's appellate brief points us to no evidence regarding its assessment of the relevance or lack of relevance of the now-destroyed video recordings at the time it received the plaintiffs' preservation letters. It argues that it merely followed the advice of its insurer and attorney to follow its own procedure. But the record is not devoid of evidence on this issue.

Golden Pantry's director of human resources and risk management, Lacey Medina, deposed that the company knew of the potential for litigation "pretty much immediately" and because of "official notices" from the plaintiffs' attorneys. She sent those notices to the company's insurer right after Golden Pantry received them, and she spoke to the company's attorney about a week after the attacks. Medina deposed that the company's policy was to save footage "of the incident in its entirety[,]" although "the company didn't give a specific number of minutes to save when an incident occurred." Golden Pantry's president, Robert Griffith, deposed that he talked with the attorney about how much footage to save. Asked whether they discussed saving additional footage, Griffith responded that he asked the attorney what do to do, and the attorney told him "the kitchen sink, something along those lines[,]" and to follow the company's "normal operating procedure." But Griffith deposed that he never told the attorney what the company's normal operating

procedure was, and the company failed to point this Court to anything in the record actually delineating Golden Pantry's "normal operating procedure."

Although between 30 and 90 days of video evidence could have been preserved, according to Griffith and Medina, the company preserved the nine minutes before even receiving the plaintiffs' preservation letters. Medina also deposed that Golden Pantry previously had received preservation letters regarding other, unrelated injuries on its premises and knew that such letters meant evidence should be preserved because of potential litigation. She deposed that, despite the preservation letters' identification of the need to preserve prior videos, Golden Pantry took no steps to do so even though it knew who Mitchell was when it received the letters. Indeed, Golden Pantry decided not to examine the prior videos to see if Mitchell appeared in them. Medina talked with the employee tasked with saving videos, but did not instruct him to save additional footage. She then went on maternity leave. When she returned, she asked this employee if he had saved more footage. He told her no, because he had not been asked to do so. Upon her return, she also asked Griffith if additional footage had been saved. He said no, because it was not the company's policy. Although Golden Pantry avers only that it followed the advice of counsel and its insurer in adhering to its video destruction policy — which is never clearly defined — it points us to nothing

indicating whether its decision to follow that advice had anything to do with its perception of the relevance of the video evidence.

Griffith's and Medina's depositions, even when viewed in the light most favorable to Golden Pantry, show the company knew that the earlier video footage was relevant when plaintiffs asked for its preservation. Yet Golden Pantry chose not to preserve these videos. On appeal, Golden Pantry argued that it satisfied its duty to preserve relevant evidence because it preserved the nine minutes showing the attack. I would find no error in the trial court's application of the summary judgment standard when it found that Golden Pantry knew the videos were relevant, yet allowed them to be destroyed anyway. See *Koch*, 303 Ga. at 344 (3).

Golden Pantry also argues on appeal that even if this Court were to conclude, as I would have done, that it failed to preserve relevant evidence, the trial court nonetheless erred because the sanctions imposed were too severe. While the majority did not need to reach this issue, given its decision, I will address it briefly.

"Where a party has destroyed or significantly altered evidence that is material to the litigation, the trial court has wide discretion to fashion sanctions on a case-by-case basis." *AMLI Residential Properties, Inc. v. Georgia Power Co.*, 293 Ga. App. 358, 361 (1) (667 SE2d 150) (2008). These sanctions may be severe. They may include

dismissal or, as in the instant case and as contemplated by our Supreme Court, the entry of a default judgment. *Koch*, 303 Ga. at 339 (2).

Before imposing such sanctions, a trial court must weigh five factors, only two of which Golden Pantry raises on appeal: whether the party seeking sanctions was prejudiced by the destruction of evidence and whether the party who destroyed the evidence acted in bad faith. *AMLI,* 293 Ga. App. at 361 (1).

Golden Pantry's defense in this case is based in part upon its alleged lack of superior knowledge that Mitchell presented a threat. This issue could have been settled by the prior videos showing whether or not Mitchell had previously exhibited threatening or erratic behavior at the store. Thus, it is clear that the missing videos prejudice Bradley and Stark's ability to prove their claims and to disprove Golden Pantry's defenses. See *AMLI*, 293 Ga. App. at 362 (1) (a) (i)-(ii) (upholding trial court determination that defendant was prejudiced because it could not examine a specific rod implicated in an electrical fire in its unaltered state because plaintiff's expert had sawed it into pieces, "foreclos[ing defendant] from an opportunity to directly challenge [plaintiff's] theory of causation").

Golden Pantry also argues that the trial court erred in imposing these sanctions because its actions were neither intentional nor in bad faith, given that it simply

followed the advice of its counsel and insurer. As discussed earlier, however, even viewed in the light most favorable to Golden Pantry, the depositions of Griffith and Medina show that the company was aware of the materiality and relevance of the now-deleted videos, and intentionally allowed their deletion. The company let the videos be destroyed despite its attorney's response referencing "the kitchen sink" when Griffith asked what to do in the context of saving additional videos. As a result, I cannot say that the trial court erred in finding that Golden Pantry's intentional decision not to preserve the videos amounted to bad faith spoliation.[1] See *R. A. Siegel Co. v. Brown*, 246 Ga. App. 177, 181 (2) (539 SE2d 873) (2000) (affirming bad faith spoliation where "plaintiffs had specifically requested the preservation of the Mercedes for use at trial, not just examination by an expert[,]" and defendant who was "experienced in litigation and claims handling procedure" knew it had an affirmative duty to preserve the vehicle but recklessly failed to do so); see generally *Baxley v. Hakiel Indus., Inc.*, 282 Ga. 312, 313-314 (647 SE2d 29) (2007) (finding bar

---

[1] As Golden Pantry acknowledges in its brief, even in the context of a trial court harshly sanctioning a party for spoliation, a showing of malice or bad faith is not always required where the destruction or loss of evidence causes significant prejudice. See *Bridgestone/Firestone North American Tire v. Campbell*, 258 Ga. App. 767, 770 (574 SE2d 923) (2002).

manager intentionally failed to preserve video that could have shown a customer drinking alcohol prior to an accident, even where manager "did not see a need to save the recording because there was no camera covering the area where [the customer] was sitting," because manager was "aware" both of the potential for litigation and of the customer's involvement in the accident and took steps to investigate, yet "failed to preserve the recording"). I would find that the trial court did not abuse its discretion in imposing these sanctions. See *Wal-Mart Stores, Inc. v. Lee*, 290 Ga. App. 541, 543-546 (1) (659 SE2d 905) (2008) (finding Wal-Mart was properly sanctioned for spoliation despite assertions that it did not intentionally destroy videotape which was recorded over as part of normal business procedures because "it is clear that [plaintiff] was contemplating litigation" and "[i]t is doubtful that the videotape would have been destroyed if it had depicted events helpful to Wal-Mart in future litigation"). As our appellate courts have determined, trial courts are authorized to impose even ultimate sanctions, including dismissal and default judgments. Id.; accord *Koch*, 303 Ga. at 339 (2).

For the foregoing reasons, I respectfully dissent.