**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 12, 2025**

# In the Court of Appeals of Georgia

A25A1130. HAILU v. JOHN MILLEDGE ACADEMY, INC.

RICKMAN, Presiding Judge.

Following a trip-and-fall at John Milledge Academy ("JMA"), Mekedelawit Hailu filed a negligence action against JMA. The trial court granted summary judgment in favor of JMA and also denied Hailu's motion for sanctions/spoliation. Hailu appeals from both of these orders and contends that the trial court erred by granting summary judgment to JMA and by denying her motion for spoliation/sanctions. For the following reasons, we reverse the judgment and remand this case for proceedings consistent with this opinion.

"Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. On appeal, we

review the grant or denial of summary judgment de novo, construing the evidence and all inferences in a light most favorable to the nonmoving party." (Citation and punctuation omitted.) *North Fulton Community Charities v. Goodstein*, 367 Ga. App. 576, 577 (887 SE2d 646) (2023).

So viewed, the record shows that on January 14, 2021, Hailu dropped her daughter off at JMA to tour the school. A few hours later, Hailu returned to pick her daughter up. This visit was only Hailu's third time to JMA and on each prior occasion, she entered the building through the elementary school building entrance. Upon her return to pick up her daughter, an administrator instructed Hailu to enter the school through a different entrance, the middle school building entrance.

As Hailu crossed the crosswalk in the parking lot, she tripped on an asphalt water-diversion feature and fell to the ground. Hailu deposed that she did not see the asphalt feature prior to her fall and that it looked the same as the surrounding asphalt. After her fall, a middle school employee helped Hailu get off the ground and recommended that she go see JMA's athletic trainer. A school employee drove Hailu's vehicle and transported her to JMA's athletic trainer at an off-site orthopedic clinic.

Several weeks after Hailu's fall, JMA's head of school directed JMA's director of operations to paint the asphalt feature yellow to prevent any future injuries. The director of operations did not take any photographs of the asphalt feature prior to painting it. The only known photograph of the asphalt feature in its pre-painted condition was a marketing photo of the front entrance of the school which does not clearly show the asphalt feature. According to the head of school, the location of Hailu's fall would have been visible to JMA's surveillance cameras, but the footage from that day was not preserved.

An engineering expert averred that he conducted a site inspection and performed an engineering inspection of the exterior walkway which provided access to the JMA middle school building The expert stated that because the asphalt feature "constituted a change in vertical elevation between 0.5 inches and 4 inches in height with no compliant ramp, the subject [asphalt feature] violated [Georgia building code]." The expert further averred that

> the [asphalt feature] surfaces were not delineated with contrasting colors or markings at the time of the incident, contrary to the advisement provided by the [Georgia building code]. This would have made the [asphalt feature] a tripping hazard due to the absence of contrasting

colors or markings which could have made it easier to see against the surrounding asphalt pavement.

In conclusion, the expert opined that "the [asphalt feature] which had a slope greater than the allowable limit provided by the [Georgia building code] and had no contrasting colors or markings created an unreasonably dangerous tripping hazard that violated the [Georgia building code]."

Hailu filed suit against JMA for negligence. JMA moved for summary judgment, arguing that the asphalt feature was open and obvious and that Hailu had equal knowledge to JMA of the hazard. Hailu filed a motion for spoliation/sanctions arguing that JMA should have preserved the incident footage because Hailu was injured and thus, it should have been reasonably foreseeable to JMA that she would contemplate litigation. The trial court granted summary judgment to JMA and also denied Hailu's motion for spoliation/sanctions.

1. Hailu contends that the trial court erred by granting summary judgment to JMA.

In considering negligence action based on premises liability,

[u]nder OCGA § 51-3-1, a person who owns or occupies land and by express or implied invitation, induces or leads others to come upon his

premises for any lawful purpose, is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe. In order to recover on a premises liability claim, a plaintiff must show (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier. Accordingly, the fundamental basis for an owner or occupier's liability is that party's superior knowledge of the hazard encountered by the plaintiff. In other words, a plaintiff is not entitled to recovery if the undisputed evidence demonstrates that the plaintiff's knowledge of the hazard was equal to or greater than that of the defendant.

(Citation and punctuation omitted.) *Goodstein*, 367 Ga. App. at 581-582 (1); see OCGA § 51-3-1." In [trip]-and-fall actions, summary judgment is appropriate only in plain, palpable, and undisputed cases." (Citation and punctuation omitted). Id. at 582 (1).

When a case involves tripping over a static condition, like the asphalt feature in this case, "the rule is well established that the basis of the proprietor's liability is his superior knowledge and if his invitee knows of the condition or hazard there is no duty on the part of the proprietor to warn him and there is no liability for resulting

injury because the invitee has as much knowledge as the proprietor does." (Citation and punctuation omitted.) *Goodstein* 367 Ga. App. at 582 (1).

Here, when viewing the evidence in the light most favorable to Hailu, the evidence showed that the asphalt feature had a high slope and that it was difficult to see because it had no contrasting colors or markings distinguishing it from the surrounding pavement. There was no evidence that JMA warned the public of this particular change in elevation of the asphalt feature. Additionally, there is no evidence that Hailu had traversed the asphalt feature previously and thus, the prior traversal rule does not apply. See *Gervin v. Retail Property Trust*, 354 Ga. App. 11, 13-14 (1) (840 SE2d 101) (2020) (Under the prior traversal rule, "when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have equal knowledge of it and cannot recover for a subsequent injury resulting therefrom.") (citation and punctuation omitted).

"[We] find that the evidence of record creates a material issue of fact as to whether the specific hazard allegedly precipitating [Hailu's] fall was readily observable or discernible to [her] in the exercise of ordinary care and whether [she] can therefore be presumed to have knowledge of it." (Citation and punctuation omitted.) *Goodstein*,

367 Ga. App. at 584 (1). Accordingly, the trial court erred by granting summary judgment to JMA. See id. (affirming the trial court's denial of summary judgment to the defendant when the evidence showed that the plaintiff tripped over an unmarked, elevated static condition and had not traversed the area prior); see also *Hagadorn v. Prudential In. Co.*, 267 Ga. App. 143, 145 (598 SE2d 865) (2004) (reversing the trial court's grant of summary judgment to the defendant in a trip and fall case when the design prevented the plaintiff from appreciating the slope that caused her fall and there were no markings alerting plaintiff to the steepness of the slope).

2. Hailu contends that the trial court erred by denying her motion for spoilation/sanctions.

"The term 'spoliation' is used to refer to the destruction or failure to preserve evidence that is relevant to contemplated or pending litigation." (Citation and punctuation omitted.) *Phillips v. Harmon*, 297 Ga. 386, 393 (II) (774 SE2d 596) (2015). "Such conduct may give rise to the rebuttable presumption that the evidence would have been harmful to the spoliator." Id. at 394 (II). "However, in order for the injured party to pursue a remedy for spoliation, the spoliating party must have been under a duty to preserve the evidence at issue." Id. "In regard to the injured party, usually the

7

plaintiff, the duty arises when that party contemplates litigation, inasmuch as litigation is obviously foreseeable to the plaintiff at that point." Id. at 396 (II). "As to the opposing party, usually the defendant, the duty arises when it knows or reasonably should know that the injured party, the plaintiff, is in fact contemplating litigation, which the cases often refer to in terms of 'notice' to the defendant." Id.

Our Supreme Court has recognized that "[n]otice in the context of spoliation can be constructive and that actual notice of contemplated litigation from the plaintiff to the defendant is not the only way that the defendant may reasonably foresee litigation, but rather, that the defendant's actions may be relevant to that determination, that is, that such actions may demonstrate constructive notice." *Phillips*, 297 Ga. at 396-397 (II).

> Notice that the plaintiff is contemplating litigation may also be derived from, i.e., litigation may be reasonably foreseeable to the defendant based on, other circumstances, such as the type and extent of the injury; the extent to which fault for the injury is clear; the potential financial exposure if faced with a finding of liability; the relationship and course of conduct between the parties, including past litigation or threatened litigation; and the frequency with which litigation occurs in similar circumstances.

Id. at 397 (II). "Thus, it may be appropriate to consider, in determining whether the defendant actually did or reasonably should have foreseen litigation by the plaintiff, not only what the plaintiff did or did not do after the injury and before the evidence in question was lost or destroyed, but also what the defendant did or did not do in response to the injury[.]" Id.

The destroyed evidence at issue in this case was surveillance video of Hailu's fall. The trial court found that Hailu "did not notify [JMA] of any contemplated or pending litigation until almost one-and-a-half years after the fall." The trial court further found that "[Hailu] failed to carry her burden to prove that the surveillance video that was overwritten actually captured her fall in any useful capacity, but even assuming it did, [JMA] was under no duty to preserve that video at the time it was lost."

There was evidence that the location of Hailu's fall would have been visible to JMA's surveillance cameras. Hailu did not have to prove the contents of the destroyed surveillance video. While a trial court has wide discretion in adjudicating spoliation issues, "an appellate court cannot affirm a trial court's reasoning which is based upon an erroneous legal theory." *Phillips*, 297 Ga. at 397 (II). Here, because the trial court's

9

exercise of its discretion appeared in part to rest on its finding that Hailu had a burden to prove that the surveillance video actually captured her fall, we must remand this case back to the trial court to apply the proper standard in reviewing Hailu's spoliation/sanctions motion. See *Phillips*, 297 Ga. at 398-399 (II); *United Parcel Service of America v. Whitlock*, 366 Ga. App. 542, 557-558 (2) (883 SE2d 556) (2023).

*Judgment reversed; case remanded. Gobeil and Davis, JJ., concur.*